United States Courts
Southern District of Texas
FILED

MAR 0 9 2005

Michael N. Milby, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

Ann W. Humphrey, individually and
on behalf of all others similarly situated,

     Plaintiff

v.

United Way of the Texas Gulf Coast,
a Texas non-profit corporation, and
United Way of the Texas Gulf Coast
Cash Balance Plan,

     Defendants.

Case No. **H 05 - 758**
Hon.

---

## PLAINTIFF ANN W. HUMPHREY'S COMPLAINT

Now comes plaintiff Ann W. Humphrey ("Humphrey"), by and through her attorneys Hertz, Schram & Saretsky, P.C. ("HS&S"), who brings this Complaint on behalf of herself and all others similarly situated against United Way of the Texas Gulf Coast ("UNT") and United Way of the Texas Gulf Coast Cash Balance Plan ("Plan") (collectively, "Defendants").[1]  In support of her Complaint, Humphrey states the following:

### Jurisdiction and Venue

1.     This Court has jurisdiction over the parties pursuant to 29 U.S.C. §§1132(a), (e) and (f).

2.     Subject matter jurisdiction exists pursuant to 29 U.S.C. §1132(e)(1).

3.     Venue is proper pursuant to 29 U.S.C. §1132(e)(2).

---

[1] Except as otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Plan.

1

**Parties and Related Entities**

4.      The Plan is a "defined benefit" pension plan governed by the Employee Retirement

Income Security Act ("ERISA"), 29 U.S.C. §1001 et seq., and is administered in Houston, Texas.

Legal process for the Plan may be served on--

>  Smith Barney Corporate Trust Co.
>  824 Market Street, Suite 210
>  Wilmington, DE 19801

or on--

>  Debra Garner King, Vice President, Finance and Administration
>  United Way Benefits Administration
>  c/o United Way of the Texas Gulf Coast
>  2200 North Loop West
>  Houston, TX 77018

or on--

>  Committee for United Way of the Texas Gulf Coast Cash Balance Plan
>  c/o United Way of the Texas Gulf Coast
>  2200 North Loop West
>  Houston, Texas 77018

5.      UNT is the principal sponsor of the Plan and is its Plan Administrator ("PA").  Legal

process on UNT may be served on its registered agent, Jacqueline S. Martin, 50 Waugh Drive,

Houston, TX 77007.

6.      The Center for the Retarded, Inc. ("CRI") is one of several Participating Agencies

that co-sponsor the Plan.

7.      The Plan was formerly known as the United Way of the Texas Gulf Coast Pension

Plan ("Prior Plan").

8.      Frederick B. Blackmer ("Blackmer") was employed by CRI and was a Participant

in the Prior Plan and Plan for over thirty years.

2

9.      Humphrey is Blackmer's sole designated beneficiary under the Plan.

### General Allegations

10.     In 1975, UNT established the Prior Plan, which was a "traditional" defined benefit pension plan. Prior Plan, p. 1.

11.     On January 1, 1996 ("the Effective Date"), the Prior Plan was converted to a "cash balance" defined benefit plan ("96Plan"). 96 Plan, p. 1.

12.     On February 5, 2002, the 96Plan was amended, but remained a cash balance plan ("02Plan"). 02Plan, last page.

13.     Under a traditional defined benefit plan, the pension is computed as a percentage of the participant's pay multiplied by years of service.

14.     By contrast, cash balance plans establish a "hypothetical" bookkeeping account for each participant that is periodically credited with a percentage of the participant's pay plus interest. IRS Notice 96-8.

15.     The account is said to be hypothetical because no account is actually established for the participant, and no amount is deposited into any account for the participant. IRS Notice 96-8. Rather, the account is purely bookkeeping in nature, as benefits are paid out of a common trust that holds all of the plan's assets for all of the plan's participants, and the participant's account balance is simply a reference point for calculating the participant's pension benefit. Id.

### Nature of the Dispute

16.     The 96Plan and 02Plan (collectively, "Plan" or "Plans") provide an Early Retirement Pension ("ERP") for Participants who satisfy certain age and service requirements at the time they separate from service.

3

17.     Blackmer met those requirements when he separated from CRI on August 6, 2003.

18.     Under the 96Plan, for ERP-eligible Participants who separate from service after the Effective Date (1/1/96), the ERP must, in all events, equal at least the amount of the pension earned under the Prior Plan as of December 31, 1995 plus the pension earned thereafter under the Plan, or, at the Participant's election, a lump sum that is the Actuarial Equivalent of the sum of these two components.  96 Plan, §§6.5 and 6.8B.

19.     On or about March 5, 2004, Blackmer's Individual Retirement Account ("IRA") received his ERP from the Plan in the form of a lump sum.  It equaled solely the Actuarial Equivalent of the pension Blackmer had earned under the Prior Plan as of 12/31/95, instead of the Actuarial Equivalent of the sum of that pension and the pension he earned under the Plan after that date.

20.     On October 11, 2004, Blackmer passed away.

21.     Humphrey, Blackmer's designated beneficiary under the Plan, seeks to recover for herself and all other similarly situated participants or their beneficiaries the pension earned after 12/31/95.

### Allegations Regarding the Summary Plan Description for the Cash Balance Plan

22.     Pursuant to ERISA §102, participants in an ERISA-governed pension plan must be furnished a summary plan description ("SPD") that describes the plan in a manner "calculated to be understood by the average plan participant."  29 U.S.C. §1022.

23.     Shortly after the Prior Plan was converted to a cash balance plan, UNT issued an SPD that explicitly refers to the Plan as the "Cash Balance Plan" (Ex. 4, *passim*) and contains several provisions dealing with the description and payment of "**BENEFITS.**"  SPD, ¶¶5 and 6.

4

24.     Pertinent to this dispute, the SPD states that a Prior Plan Participant's "beginning account balance" under the Cash Balance Plan equals the present value of the Participant's accrued benefit as of 12/31/95 "determined under the terms of the [Prior] Pension Plan." SPD, ¶5C.

25.     The SPD explains that the beginning account balance "reflects" the pension earned under the Prior Plan, and that the Cash Balance Plan "adds" to this beginning amount "contribution credits" and "interest credits":

> Under the Cash Balance Plan, an account balance will be recorded for you which will reflect the accrued benefit that you have earned. Each year that you are employed by a participating agency a ***contribution credit*** and an ***interest credit*** are added to your account.

SPD, ¶5A (emphasis in original).

26.     As emphasized in the SPD, interest credits are earned on the Participant's beginning account balance, as well as on the contribution credits made on behalf of the Participant and, therefore, the "retirement benefit" under the Cash Balance Plan includes <u>all</u> of these credits:

> The ***interest credit*** . . . will be earned on your beginning account balance . . . as well as on your new accrued benefits under the Cash Balance Plan.

SPD, ¶5D (emphasis in original).

> Your retirement benefit at any time is equal to the sum of the following four items:
>
> (i) the value of your beginning account balance under the Cash Balance Plan . . .;
>
> (ii) the contribution credits you have received under the Cash Balance Plan;
>
> (iii) the interest credits you have received upon termination under the Cash Balance Plan (<u>on both your beginning account balance and your contribution credits</u>); and

(iv) if you decide to defer receipt of your benefit after you terminate employment, the interest credits you receive between the date you terminate employment and the date that you elect to receive your benefit.

SPD, ¶6A (emphasis added).

27.     An Example in the SPD further communicates that interest credits are earned on both the contribution credits and beginning account balance.  SPD, ¶5E.

28.     Consistent with the representations in the SPD, both the 96Plan and 02Plan (a) provide a "Contribution Credit" equal to a specified percentage of the Participant's annual compensation, and (b) state that Participants accrue each month 1/12th of this amount.  Plans, §§1.1 and 6.1.

29.     The 96Plan and 02Plan further provide that the accrued benefit equals the sum of (a) the Account Balance as of the end of the prior year, and (b) the 1/12th Contribution Credits thereto, "automatically" increased at the end of each calendar month by 1/12th of the "Interest Credit" (a specified annual rate).  Plans, §§1.1 and 6.2.

30.     Thus, Interest Credits are earned on not only the Contribution Credits, but on also the Account Balance, including the opening Account Balance.

31.     Contrary to the plain meaning of the SPD, 96Plan and 02Plan, UNT distributed to Blackmer solely the value of the pension he had earned under the Prior Plan, attributing no value whatsoever to the Contribution Credits or Interest Credits he earned under the Cash Balance Plan and, thus, depriving him of his promised pension benefit.

## Allegations Regarding the Prior Plan

32.    Under ERISA, a participant's accrued pension benefit is the annual benefit under the plan commencing at normal retirement age ("NRA"), which ERISA generally defines as age 65. 29 U.S.C. §§1002(23) and (24).

33.    Under the Prior [traditional] Plan, a Participant who retired at NRA (age 65) was entitled to a Normal Retirement Pension ("NRP")--a five-year certain and life annuity computed as a percentage of the Participant's earnings multiplied by years of service. Prior Plan, §§4.3, 5.2 and 5.3.

34.    Thus, the accrued pension benefit under the Prior Plan was a five-year certain and life annuity commencing at age 65, and computed as a percentage of the Participant's pay multiplied by the Participant's years of service.

35.    The Prior Plan also provided an ERP for Participants who–

   (a)    terminated service at or after age 55 (but before age 65) with at least 5 years of service, **or**

   (b)    terminated service at or after age 50 (but before age 55) with combined age and years of service totaling at least 65.

Prior Plan, §4.3.

36.    Like the NRP, the ERP was computed as a percentage of the Participant's pay multiplied by the Participant's years of service, and was payable as a five-year certain and life annuity. Prior Plan, §§4.3 and 5.3.

37.    However, unlike the NRP, the ERP was electable <u>before</u> NRA. Prior Plan, §5.3.

7

38.    Moreover, if an ERP-eligible Participant elected to receive the ERP at or after age 55 (and had no earnings above the Social Security Wage Base), there was no actuarial reduction for early commencement of benefits. Prior Plan, §5.3. If the Participant had earnings above the Social Security Wage Base, only the portion of the ERP attributable to such earnings was actuarially reduced for commencement before NRA (assuming, again, commencement at or after age 55). Id.

39.    Thus, the ERP under the Prior Plan was an especially valuable benefit.

## Allegations Regarding the 96Plan

40.    As stated in paragraph 11, the 96Plan resulted from a conversion of the Prior [traditional] Plan to a cash balance plan.

41.    Accordingly, the 96Plan established a bookkeeping account for each Participant, referred to as the Account Balance, which was periodically credited with a percentage of the Participant's pay (the "Contribution Credit") and interest (the "Interest Credit"). Plan, §1.1.

42.    The opening Account Balance for Participants who were in the Prior Plan was referred to as the Prior Plan Account and equaled the lump sum present value of the annuity the Participant had accrued under the Prior Plan as of 12/31/95 (i.e., the five-year certain and life annuity payable at NRA), as determined using the Plan's actuarial assumptions (interest and mortality) for determining the Actuarial Equivalent. Plan, §1.1.

43.    At any given time, a Participant's Account Balance equals the Participant's Prior Plan Account (i.e., opening Account Balance), if any, plus all Contribution Credits and Interest Credits made on behalf of the Participant or Former Participant (a Participant whose employment has terminated, but who has not yet commenced receipt of his/her pension benefit). Plan, §1.1.

8

44.     The 96Plan provided an ERP for Participants who met the same eligibility requirements for an ERP specified in the Prior Plan.  Prior Plan, §4.3; and 96Plan, §5.3.

45.     Pursuant to §6.5 of the 96Plan, for ERP-eligible Participants who separate from service on or after the Effective Date (1/1/96), the ERP can <u>never</u> be less than the sum of (a) the pension earned under the Prior [traditional] Plan as of 12/31/95, and (b) the pension earned under the [cash balance] Plan (the "Section 6.5 Guarantee"):

> **Notwithstanding any provision of the Plan to the contrary**, any Participant who retires on or after the Effective Date shall be entitled to an Early Retirement Pension equal to at least the Pension amount derived from the formula in effect under the Prior Plan on December 31, 1995 for all years of Credited Service (as defined in the Prior Plan) prior thereto **plus** the pension earned under this Plan.

96Plan, §6.5 (emphasis added).

46.     The normal form of payment for the ERP (and every other pension payable under the 96Plan) was a five-year certain and life annuity.  96Plan, Article VI.

47.     Participants could elect, however, to receive a lump sum that was the Actuarial Equivalent of this normal annuity benefit, as determined on the basis of the Plan's actuarial assumptions (interest rate and mortality) for determining the Actuarial Equivalent.  96Plan, §6.8B (lump sum option) and §1.1.

## Allegations Regarding the 2002 Amendments to the 96Plan

48.    As noted in paragraph 12, the 02Plan was adopted February 5, 2002. However, it purports to be <u>retroactively</u> "effective January 1, 2001." 02Plan, last page.

49.    The 02Plan amended two provisions of the 96Plan relating to the ERP: The Section 6.5 Guarantee and the §6.8B lump sum option.

50.    Section 6.5 was amended to provide that the ERP is "the greater of" (a) the Actuarial Equivalent of the participant's Account Balance, and (b) the Prior Plan accrued benefit reduced for early commencement in accordance with the provisions of the Prior Plan. 02Plan, §6.5.

51.    Section §6.8B was amended to provide that any optional lump sum is "the greater of" (a) the Participant's Account Balance, and (b) the Actuarial Equivalent of the Participant's Prior Plan accrued benefit. 02Plan, §6.8 B (lump sum option).

52.    Pursuant to §11.2 of the 96Plan and §11.2 of the 02Plan, a Plan amendment may not "deprive, limit, lessen, or restrict <u>any</u> vested right or interest to which any Participant is already entitled":

> 11.2 <u>Limitations on Right to Amend</u>: No amendment of this Plan or the Trust Agreement shall vest in the Employer any right, title, or interest in or to the Trust Fund. <u>No such amendment shall</u>, without his consent, <u>deprive, limit, lessen, or restrict any vested right or interest to which any Participant is already entitled hereunder.</u>

96Plan and 02Plan, §11.2 (emphasis supplied).

53.    ERISA §204(g), commonly known as "the anti-cutback rule," likewise prohibits plan amendments that reduce or eliminate pension benefits that have already accrued. 29 U.S.C. §1054(g).

54.     Therefore, to the extent the 02Plan amendments reduce or eliminate benefits that have already accrued, those amendments are illegal and unenforceable.

55.     Further, ERISA §204(h) provides that a defined benefit plan "may not be amended so as to provide for a significant reduction in the rate of future benefit accrual, <u>unless</u>, after adoption of the plan amendment and not less than 15 days before the effective date of the plan amendment, the plan administrator provides a written notice, setting forth the plan amendment and its effective date to each participant in the plan" ("the ERISA §204(h) Notice"). 29 U.S.C. §1054(h).

56.     UNT <u>never</u> issued an ERISA §204(h) Notice with respect to the 02Plan. <u>See</u> August 2004 correspondence between Cantarella and Debra King regarding the §204(h) Notice (Ex. 16).

57.     Therefore, to the extent the 02Plan amendments to §§6.5 and 6.8B significantly reduce the rate of future benefit accrual, they are not effective.

### Allegations Regarding the Amount of Blackmer's Lump Sum Distribution.

58.     Blackmer was born on December 20, 1939.

59.     On August 6, 2003, Blackmer separated from CRI.

60.     Because he had attained the age of 63.7 years and had the requisite years of service as of that date, Blackmer was ERP-eligible.

61.     In January 2004, Blackmer elected to receive his ERP in the form of an immediate lump sum to be rolled over directly into his IRA.

62.     On or about March 5, 2004, Blackmer's IRA received a lump sum rollover distribution from the Plan in the amount of $40,700.25.

11

63.    This amount represented solely the Actuarial Equivalent, as of February 1, 2004, of the pension Blackmer had earned under the Prior Plan, which UNT correctly determined was a five-year certain and life annuity in the amount of $302.82/month, commencing at NRA (age 65).

64.    UNT's determination that Blackmer's ERP equaled solely the Actuarial Equivalent of his Prior Plan benefit ($40,700.25) violated the §11.2 anti-cutback provisions of the Plan and ERISA §204(g) because it did not include the pension that Blackmer earned under the Plan and was entitled to receive under the Section 6.5 Guarantee of the 96Plan.

65.    UNT's determination that Blackmer's ERP equaled solely the Actuarial Equivalent of his Prior Plan benefit also violated ERISA §204(h) because (a) the failure to include in Blackmer's ERP the pension he earned under the Plan effectively reduced Blackmer's rate of benefit accrual after 1/1/96 to zero; and (b) UNT never issued an ERISA §204(h) Notice of "significant reduction" in the rate of future benefit accrual with respect to the 02Plan, making the 02Plan amendments to §§6.5 and 6.8B of the 96Plan unenforceable.

66.    As stated in paragraphs 45 and 47, under §§6.5 and 6.8B of the 96Plan, for ERP-eligible Participants who separate from service after 1/1/96, the ERP must in all events equal at least the pension earned under the Prior Plan plus the pension earned under the Plan, or, at the participant's election, a lump sum that is the Actuarial Equivalent of this sum. 96Plan, §§6.5 and 6.8B.

67.    As required under the 96Plan, UNT converted the pension Blackmer had accrued under the Prior Plan as of 12/31/95 (i.e., the  five-year certain and life annuity in the amount of $302.82/month, commencing at age 65) into an actuarially equivalent present value using the Plan's actuarial assumptions (interest and mortality) for determining the Actuarial Equivalent.

12

68.     The resultant amount, $21,622.80, became Blackmer's opening Account Balance (i.e, Prior Plan Account).

69.     From 1/1/96 (the date the Prior Plan was converted to a cash balance plan) to 2/1/04 (the last date to which Interest Credits or Contribution Credits accrued to Blackmer), Blackmer's Account Balance increased from $21,622.80 (his Opening Account Balance) to $38,024.61 (his ending Account Balance).

70.     This increase was attributable solely to the Contribution Credits and Interest Credits that were added to Blackmer's opening Account Balance.

71.     Because Blackmer's opening Account Balance (i.e., the Prior Plan Account) was the Actuarial Equivalent of his Prior Plan accrued benefit (see paragraph 42 above), Blackmer's opening Account Balance was earned under the Prior Plan, not the Plan.

72.     Accordingly, the pension Blackmer earned under the Plan was the difference between his opening Account Balance on 1/1/96 ($21,622.80) and his ending Account Balance on 2/1/04 ($38,024.61), or **$16,401.81**.

73.     When UNT computed the lump sum Actuarial Equivalent as of 2/1/04 of Blackmer's Prior Plan accrued benefit (i.e., the five-year certain and life annuity in the amount of $302.82/month commencing at age 65), it used an Actuarial Equivalent factor of 134.404101 to produce a lump sum in the amount of $40,700.25 (the amount UNT distributed to Blackmer's IRA as a rollover distribution of his ERP).

74.     Humphrey has no quarrel with the factor UNT used to compute the Actuarial Equivalent of Blackmer's Prior Plan accrued benefit. She disputes only UNT's failure to include the pension Blackmer earned under the Plan in its Actuarial Equivalent calculation.

75.    Application of the 134.404101 Actuarial Equivalent factor to the pension Blackmer earned under the Plan produces an Actuarially Equivalent five-year certain and life annuity in the amount of $122.03/month. [Proof: $16,401.81 ÷ 134.404101 = $122.03].

76.    Because this annuity is the Actuarial Equivalent of the pension Blackmer earned under the Plan, applying the same factor to this annuity necessarily produces a lump sum that equals the $16,401.81 benefit Blackmer earned under the Plan. [Proof: $122.03 x 134.404101 = $16,401.81].

77.    Accordingly, for Blackmer, the ERP lump sum to which he was entitled under the Section 6.5 Guarantee and §6.8B lump sum option of the 96 Plan equaled the sum of $40,700.25 (the Actuarial Equivalent, as of 2/1/04, of the pension he accrued under the Prior Plan) and $16,401.81 (the Actuarial Equivalent, as of 2/1/04, of the pension he earned under the Plan), or **$57,102.06.**

78.    This same amount can be confirmed by (a) aggregating the annuities Blackmer earned under the Prior Plan and Plan, and (b) then multiplying by the factor UNT used to compute the Actuarial Equivalent of the Prior Plan accrued benefit. [Proof: $302.82 + $122.03 = $424.85 aggregate annuity x 134.404101 factor = $57,101.58 (small difference due to rounding)].

79.    Because §11.2 of the Plan and §204(g) of ERISA prohibit amendments that reduce benefits that have already accrued, and because ERISA §204(h) prohibits plan amendments that significantly reduce the rate of future benefit accrual unless an ERISA §204(h) Notice was issued *after* the amendment was adopted and *before* the amendment was made effective, Blackmer should have received the ERP to which he was entitled under the Section 6.5 Guarantee and §6.8 lump sum option under the 96Plan ($57,102.06), not the ERP payable under the 02Plan amendments to §§6.5 and 6.8B of the 96Plan ($40,700.25).

80.     Blackmer received only the ERP payable under the 02Plan amendments to §§6.5 and 6.8B of the 96Plan ($40,700.25), a shortfall of **$16,401.81**.

### Exhaustion of Administrative Remedies

81.     On June 10, 2001, Blackmer's brother-in-law, George Beatty, Esq. ("Beatty"), sent a letter to UNT on behalf of Blackmer ("the Claim") which, among other things, advised that (a) Blackmer intended to retire before his NRA (age 65), and (b) pursuant to §6.5 of the 96Plan, it was expected that UNT would calculate Blackmer's ERP as the sum of the pension earned under the Prior Plan as of 12/31/95 ($302.82) and the pension earned under the Plan.

82.     The Claim followed earlier communications between Beatty and UNT regarding the amount of credited service UNT had used to compute Blackmer's Prior Plan accrued benefit, which service is not at issue in this lawsuit.

83.     In a letter to Beatty dated September 12, 2001 ("Initial Decision"), UNT agreed that Blackmer's ERP was the sum of the pension earned under the Prior Plan as of 12/31/95 and the pension earned under the Plan:

> We understand your primary question is how to correctly calculate the amount of the benefit earned under the Plan from January 1, 1996 to Mr. Blackmer's normal retirement date of January 1, 2005. As you correctly point out in your letter, this benefit is added to the benefit earned through December 31, 1995 under the old United Way of the Texas Gulf Coast Pension Plan (which was in effect until December 31, 1995) to arrive at Mr. Blackmer's total benefit at his normal retirement date.

84.     However, in the Initial Decision, UNT incorrectly computed both of these pensions.

15

85.     Regarding the pension earned under the Prior Plan as of 12/31/95, UNT determined that the five-year certain and life annuity equaled only $287.71/month, an amount that was facially incorrect as UNT had previously calculated Blackmer's Prior Plan pension to be a five-year certain and life annuity in the amount of $302.82/month.  In fact, UNT recently confirmed that this latter number is the correct amount.

86.     Regarding the pension earned under the Plan, UNT concluded that it would equal approximately $38.55/month on 1/1/05 when Blackmer would be age 65.

87.     UNT derived this annuity by (a) totaling Blackmer's actual and estimated Contribution Credits and Interest Credits to 1/1/05 when Blackmer would be age 65  except for Interest Credits earned on Blackmer's opening Account Balance, and then (b) dividing this sum by a factor based on the Plan's actuarial assumptions for determining the Actuarial Equivalent.

88.     UNT then added the $38.55 annuity to the facially erroneous $287.71 annuity and concluded that the estimated annuity payable to Blackmer on 1/1/05 would be $326.26–only $23.44 more than the annuity Blackmer had earned solely under the Prior Plan as of 12/31/95 (i.e, nine years before the 1/1/05 assumed retirement date).

89.     The $38.55 annuity calculated by UNT was greatly understated because it was derived from a sum that included only the Contribution Credit and Interest Credits thereon, when it should have been derived from a sum that also included the Interest Credits on the opening Account Balance.

90.     As acknowledged by UNT in its Initial Decision on Blackmer's claim, it did not include Interest Credits on Blackmer's opening Account Balance.

91.     On October 26, 2001, Beatty sent a letter to UNT ("the Appeal"), requesting a formal review under §9.2 of the Plan of the claims he had made on behalf of Blackmer, and formally requesting that UNT compute the pension earned under the Plan based on the increase in Blackmer's Account Balance after 1/1/96 (the date Blackmer's opening Account Balance was established).

92.     In support, Beatty quoted the Section 6.5 Guarantee under the 96Plan.  He also cited §6.2 of the Plan which provides that the accrued benefit is the sum of the Account Balance as of the end of the prior year and the Contribution Credits and Interest Credits thereon.  96Plan and 02 Plan, §6.2.

93.     Beatty also quoted from or referred to ¶¶5A, 5D, 5E and 6A of the SPD UNT issued shortly after it converted the Prior Plan to a cash balance plan, which repeatedly states that Interest Credits will be earned on the opening Account Balance.  For example, ¶5D of the SPD states:

> The *interest credit* . . . will be earned on your beginning account balance . . . as well as on your new accrued benefits under the Cash Balance Plan.

SPD, p.7 (emphasis in original).

94.     On December 17, 2001, UNT sent a letter to Beatty ("the Final Decision") affirming its earlier findings, including its conclusion that Interest Credits on Blackmer's opening Account Balance were not part of the pension accrued under the Plan, but were, instead, part of the pension Blackmer accrued under the Prior [traditional] Plan.

95.     UNT subsequently sent Beatty another version of the Final Decision that changed only a minor scrivener's error.

17

96.     As stated in paragraphs 62 and 63, the ERP lump sum UNT distributed to Blackmer ($40,700.25) was the Actuarial Equivalent of solely the pension Blackmer had earned under the Prior Plan as of 12/31/95 (i.e., the five-year certain and life annuity in the amount of $302.82/month, commencing at age 65).

97.     However, in both its Initial Decision and Final Decision on Blackmer's Claim, UNT agreed with Blackmer that his ERP equaled the pension earned under the Prior Plan plus the pension earned under the Plan.  UNT disagreed only as to the amount of each of these pensions and how they should be computed.

98.     When UNT distributed Blackmer's ERP lump sum, it corrected its computational errors with respect to the pension earned under the Prior Plan, but compounded its errors with respect to the pension earned under the Plan by effectively deeming that amount to be zero.

99.     Based on the foregoing, Blackmer exhausted his administrative remedies under the Plan, and any further effort to utilize the Plan's administrative procedures would be futile.

100.    As noted, on October 11, 2004, Blackmer passed away.

101.    Humphrey, Blackmer's beneficiary, seeks the shortfall due her and all other similarly situated beneficiaries, Participants and Former Participants.

### Class Action Allegations

102.    Humphrey's claims are brought on behalf of the following individuals ("the Class"):

> All Participants or Former Participants in the Plan (and beneficiaries of such Participants or Former Participants) who (1) as of 12/31/95, had accrued a pension under the Prior Plan, (2) were or hereafter are ERP-eligible at the time of separation from UNT or a Participating Agency, and (3) either received an ERP or are eligible to receive an ERP or hereafter become eligible to receive an ERP.

103.    The members of the Class are so numerous that joinder is impracticable. On information and belief, the Class exceeds 300 members.

104.    Humphrey's claims are typical of those of the rest of the Class because (a) as to all Class members, UNT calculated an ERP that was less than the amount to which they were entitled under §§6.5 and 6.8B of the 96Plan, and (b) in light of the 02Plan amendments to §§6.5 and 6.8B of the 96Plan, which violate the Plan's and ERISA's anti-cutback provisions and also violate ERISA §204(h), UNT has evinced an intent to do so with respect to ERP benefits payable in the future.

105.    There exist questions of law common to all members of the Class that predominate over any questions affecting individual members. Those questions include, without limitation, the following:

A.    Whether the ERP payable to Class members must be no less than the ERP payable under §§6.5 and/or 6.8B of the 96Plan; and

B.    Whether the pension earned under the Plan includes Interest Credits on the opening Account Balance.

106.    Humphrey will fairly and adequately represent the interests of the other members of the Class as her interests are coincident with, and not antagonistic to, those of the other members of the Class.

107.    In addition, the attorneys for the proposed Class are experienced in class action litigation and matters arising under ERISA.

108.    A class action is superior to other available litigation methods for the fair and efficient adjudication of this controversy, as joinder of all members of the Class is impracticable. Furthermore, members of the Class injured by Defendants' conduct would not be compensated for their injuries in the absence of a class action as it is too expensive for an individual member to

19

prosecute the claims on solely his or her own behalf. Even if individual members of the Class could afford to prosecute the claims alone, the Court would be inundated with myriad lawsuits involving identical issues. Individual litigation magnifies the delay and expense to all parties and to the court system of resolving the controversies engendered by Defendants' actions. By contrast, a class action presents fewer management difficulties and provides the benefits of unitary adjudication, economies of scale and comprehensive supervision by a single court. Lastly, the management of this class action will not be difficult since little contact with individual members will be necessary. Defendants' conduct, and not that of the members of the Class, represents the primary issue in this litigation.

### Count I-Action for Benefits Due Under the Plan

109.    Humphrey realleges and incorporates by reference the preceding paragraphs of this Complaint as though fully restated herein.

110.    Humphrey seeks benefits due under the Plan, as permitted under ERISA §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B).

111.    Under the 96Plan, the ERP payable to an ERP-eligible participant who separates from service after 1/1/96 must at least equal the pension earned under the Prior Plan plus the pension earned under the Plan, or, at the participant's election, a lump sum that is the Actuarial Equivalent of this sum. 96Plan, §§6.5 and 6.8B.

112.    The pension earned under the Plan is an annuity that is the Actuarial Equivalent of the difference between the Participant's opening Account Balance and ending Account Balance (which difference equals the sum of all Contribution Credits and Interest Credits made to the Participant's Account Balance), or the lump sum Actuarial Equivalent of this annuity.

113.    Section 11.2 of the Plan provides that no Plan amendment shall "deprive, limit, lessen, or restrict any vested right or interest to which any Participant is already entitled hereunder." 96Plan and 02Plan, §11.2.

114.    ERISA's anti-cutback rule likewise prohibits plan amendments that reduce or eliminate benefits that have already accrued.  29 U.S.C. §1054(g).

115.    Further, ERISA §204(h) prohibits plan amendments that significantly reduce the rate of future benefit accrual <u>unless</u> a notice of such reduction was issued to participants *after* the amendment was adopted and *before* it became effective,

116.    Because UNT never issued an ERISA §204(h) Notice with respect to the 02Plan, the 02Plan amendments to §§6.5 and 6.8B of the 96Plan, which significantly reduced the rate of future benefit accrual, are not enforceable.

117.    Blackmer was ERP-eligible when he separated from CRI on August, 6, 2003.

118.    Blackmer elected to receive his ERP in the form of a lump sum.

119.    Blackmer received a lump sum that was the Actuarial Equivalent of <u>solely</u> the pension he earned under the Prior Plan as of 12/31/95, or $40,700.25.

120.    Blackmer's ERP lump sum should also have included the Actuarial Equivalent of the pension he earned under the Plan as of 2/1/04 (the last date to which his Account Balance accrued Contribution Credits or Interest Credits), or $16,401.81.

121.    Accordingly, Blackmer's ERP lump sum should have equaled $57,102.06 ($40,700.25 + $16,401.81).

21

122.    WHEREFORE, Humphrey (Blackmer's beneficiary under the Plan) requests that this Court order Defendants to–

A.    Recompute the ERP paid or payable to each Class member as (I) the pension earned under the Prior Plan plus the pension earned under the Plan, or (ii), in the case of a lump sum distribution, the Actuarial Equivalent of this sum;

B.    Pay to each Class member who has already received an ERP (or to the beneficiary of such Class member), the difference between that ERP and the ERP computed under subparagraph A, plus prejudgement interest commencing on the date of the prior ERP payment(s), as permitted under ERISA §§502(a)(1)(B) and 502(a)(3), 29 U.S.C. §§1132(a)(1)(B) and 1132(a)(3);

C.    Pay costs and attorneys' fees incurred in prosecuting this action, as permitted under ERISA §502(g), 29 U.S.C. §1132(g); and

D.    Pay post-judgment interest, as required under 28 U.S.C. §1961.

22

### Count II–Action to Enforce the Terms of the Plan and ERISA §§204(g) and 204(h)

123.    Humphrey realleges and incorporates by reference the preceding paragraphs of this Complaint as though fully restated herein.

124.    Humphrey seeks enforcement of §§6.5 and 6.8B of the 96Plan and §11.2 of the 96Plan and 02Plan, and any other equitable relief the Court deems appropriate, as permitted under ERISA §502(a)(3), 29 U.S.C. §1132(a)(3).

125.    Under the 96Plan, the ERP payable to an ERP-eligible participant who separates from service after 1/1/96 must at least equal the pension earned under the Prior Plan plus the pension earned under the Plan, or, at the participant's election, a lump sum that is the Actuarial Equivalent of this sum. 96Plan, §§6.5 and 6.8B.

126.    The ERP UNT distributed to Blackmer equaled solely the Actuarial Equivalent of the pension he accrued under the Prior Plan.

127.    Section 11.2 of the Plan provides that no Plan amendment shall "deprive, limit, lessen, or restrict any vested right or interest to which any Participant is already entitled hereunder." 96Plan, §11.2; and 02Plan, §11.2.

128.    ERISA's anti-cutback rule likewise prohibits plan amendments that reduce or eliminate benefits that have already accrued.  29 U.S.C. §1132(g).

129.    Further, ERISA §204(h) prohibits plan amendments that significantly reduce the rate of future benefit accrual unless a notice of such reduction was issued to participants *after* the amendment was adopted and *before* it became effective.

130.    The 02Plan amendments to §§6.5 and 6.8B of the 96Plan provide that the ERP equals the greater of the Prior Plan accrued benefit and the accrued benefit under the Plan (or the Actuarial Equivalent of one of these amounts).

131.    The 02Plan amendments to §§6.5 and 6.8B of the 96Plan reduce ERP benefits already accrued as of the date the 02Plan amendments were adopted (2/1/04) because, prior to that date, §§6.5 and 6.8B provided that the ERP equaled the sum of pension earned under the Prior Plan benefit and the pension earned under the Plan (or the Actuarial Equivalent of the sum of these amounts).    Therefore, under the Plan's and ERISA's anti-cutback provisions, the 02Plan amendments are unenforceable.

132.    The 02Plan amendments to §§6.5 and 6.8B also significantly reduce the rate of future benefit accrual because, under those amendments, the ERP is the greater of the Prior Plan accrued benefit and the accrued benefit under the Plan (or the Actuarial Equivalent of one of these amounts), rather than the sum of these amounts.

133.    UNT never issued an ERISA §204(h) Notice with respect to the 02Plan.    Therefore, the 02Plan amendments are unenforceable for the additional reason that they violate ERISA §204(h).

134.    WHEREFORE, Humphrey requests that this Court order Defendants to–

A.    Compute the ERP payable to each Class member as the pension earned under the Prior Plan plus the pension earned under the Plan, or the Actuarial Equivalent of this sum.

B.    Pay the costs and attorneys' fees incurred in prosecuting this action, as permitted under ERISA §502(g), 29 U.S.C. §1132(g).

24

Respectfully submitted,

*Eva T. Cantarella*

Hertz, Schram & Saretsky, P.C.
By: Bradley J. Schram (MI Bar #P26337)
     Robert P. Geller (MI Bar #P34391)
     Eva T. Cantarella (MI Bar #P51917)
Attorneys for Plaintiff
1760 S. Telegraph Rd., Suite 300
Bloomfield Hills, MI 48302
off. (248) 335-5000

Dated: March 8, 2005

*William H. Bruckner*

Bruckner Burch PLLC
By: William H. Bruckner (TX Bar # 03240500)
Local Counsel for Plaintiff
5847 San Felipe, suite 3900
Houston, TX 77057
off. (713) 877-8065
fax. (713) 877-8065

Dated: March 9, 2005

25

JS 44 (Rev 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Ann W. Humphrey

**DEFENDANTS**
United Way of the Texas Gulf Coast, and United Way of the Texas Gulf Coast Cash Balance Plan

**(b)** County of Residence of First Listed Plaintiff   Harris
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Harris
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED

# H 05 - 758

**United States Courts Southern District of Texas FILED**

**MAR 0 9 2005**

Michael N. Milby, Clerk

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Hertz, Schram & Saretsky, P.C., 1760 S. Telegraph Rd., #300, Bloomfield Hills, MI 48302-0183; (248) 335-5000

Attorneys (If Known)
unknown

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                    and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**
PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence
Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☒ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
29 U.S.C. section 1132(a)
Brief description of cause:
Failure to follow the terms of the Plan in calculating early retirement benefits

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ injunctive relief & monetary relief (est. #5 million)
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____    DOCKET NUMBER _____

DATE   3/7/2005

SIGNATURE OF ATTORNEY OF RECORD   Eva T. Cantarella

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____