IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES COURTS
SOUTHERN DISTRICT OF TEXAS
FILED
MAY 22 2006
MICHAEL N. MILBY, CLERK OF COURT

| | | |
|---|---|---|
| ANN W. HUMPHREY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-758 |
| | § | |
| UNITED WAY OF THE TEXAS GULF | § | |
| COAST, A TEXAS NON-PROFIT | § | |
| CORPORATION, AND UNITED | § | |
| WAY OF THE TEXAS GULF COAST | § | |
| CASH BALANCE PLAN, | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

The United Way of the Texas Gulf Coast (the "United Way") and the United Way of the Texas Gulf Coast Cash Balance Plan (the "Plan") (collectively, the "Defendants") oppose Plaintiff's Motion for Class Certification and would respectfully show the Court the following:

## I.    SUMMARY OF THE ARGUMENT

Plaintiff Ann W. Humphrey ("Humphrey") fails entirely to meet her burden to establish that all requirements of Rule 23 of the Federal Rules of Civil Procedure are satisfied. Humphrey cannot satisfy any of the four requirements of Rule 23(a).  First, Humphrey fails to establish that she can adequately represent the proposed class, as required under Rule 23(a)(4). Humphrey has no knowledge or understanding of any facts underlying this litigation outside of what she has been told by her counsel or her friend and Plan participant, Frederick Blackmer ("Blackmer").  Humphrey has exercised no control over this litigation, and she has not supervised her counsel at all.  Indeed, the evidence shows that Humphrey is simply lending her name to a suit controlled by her counsel.  Humphrey's complete lack of knowledge and involvement in her case is fatal to a finding of adequacy under Rule 23(a)(4).  In addition, the questionable performance of Humphrey's counsel in this lawsuit shows that they are not competent to adequately serve the interests of the proposed class.

Second, even though Humphrey has had ample time to obtain and present evidence supporting the numerosity requirement of Rule 23(a)(1), Humphrey comes nowhere close to the requisite showing.  Humphrey only speculates regarding the size of the proposed class, which is overly broad as defined.  Moreover, she does not even attempt to make the requisite showing of important factors relevant to whether joinder is impracticable.  Humphrey also offers no evidence of the number of class members who have exhausted their administrative remedies.  In light of these failures, Humphrey entirely misses the mark with regard to proving the numerosity necessary for class certification.

Third, Humphrey fails to establish that her claims satisfy the typicality requirement of Rule 23(a)(3) because her claims are atypical of members of the proposed class. While Humphrey (as a Plan beneficiary) has standing to bring a claim for Plan benefits under ERISA because Blackmer (a Plan participant) exhausted his administrative remedies, a requirement for bringing a claim for plan benefits under ERISA, she has no evidence that any member of the proposed class has exhausted his or her administrative remedies. Additionally, because detrimental reliance is an element of the scrivener's error defense to Humphrey's claims, this individualized inquiry is fatal to Humphrey's request for class certification. Moreover, the evidence shows that neither Humphrey nor Blackmer relied on the mistaken phrase in a Plan document that forms the basis of her claims, and Humphrey has no evidence that any member of the purported class detrimentally relied on this language.

Fourth, Humphrey cannot fulfill the commonality requirement of Rule 23(a)(2). The issue of exhaustion bears not only on numerosity and typicality; commonality is also defeated because only Humphrey has standing to bring a claim. Moreover, questions of law and fact cannot be common to the proposed class when the evidence shows that only Humphrey has a claim that is ripe for adjudication.

Humphrey also fails to satisfy the implied requirements of Rule 23(a) that a class "exists." The proposed class she has defined is so overly broad that the Court cannot determine whether any particular individual may actually be a member of the class.

Furthermore, Humphrey cannot fulfill the requirements of any of the three subsections of Rule 23(b) under which she seeks certification:  Rule 23(b)(1)(A), Rule 23(b)(2), or Rule 23(b)(3).  Humphrey cannot achieve class certification under Rule 23(b)(1)(A) not only

because Defendants oppose class certification, but also because Humphrey seeks predominately money damages.

In addition, Humphrey's proposed class cannot be certified under Rule 23(b)(2) because while Humphrey seeks predominately (if not only) money damages, Rule 23(b)(2) pertains only to cases in which plaintiffs seek predominately injunctive or declaratory relief rather than money damages.

Finally, certification of Humphrey's proposed class under Rule 23(b)(3) is inappropriate because Humphrey cannot satisfy the predominance and superiority requirements necessary for class certification.  Humphrey offers conclusory assertions, but no evidence, that common issues would predominate over individual issues in this lawsuit, and she entirely fails to address the issues requiring individual attention that would in fact predominate this case: reliance, exhaustion of remedies, and damages.  Further, Humphrey's claims that class resolution would be the superior  method of adjudication are based on speculative assertions regarding the number of members of in the proposed class and incorrect pronouncements about the issues in this case.

For all of these reasons, the Court should deny Plaintiff's Motion for Class Certification.

## II.    PERTINENT FACTS[1]

Plaintiff's counsel alone have orchestrated and directed this lawsuit, which involves alleged claims to recover Plan benefits not only for Humphrey, the beneficiary of Plan participant Frederick Blackmer ("Blackmer"), but also for members of a purported class.  *See* Complaint ¶ 102.

---

[1]  The facts of this case are more fully set forth in Section II of Defendants' Motion for Summary Judgment.

For more than 35 years, the United Way has sponsored a pension plan for its employees and employees of its affiliated agencies so that these smaller agencies would have a chance to provide retirement benefits to their employees. *See* Defs.' Mot. for Sum. Judg. at 5. By 1994, however, the United Way and participating agencies became increasingly concerned about the financial burden that the pension plan was placing on them. *Id.* Ultimately, the United Way decided to convert the pension plan to a structure that would reduce costs to the agencies and allow the plan's assets to continue to grow so that termination would be feasible in the future. *Id.* at Ex. B at Ex. 1 (UW 1505); Ex. D at 28; Ex. E at 994-6.

Effective January 1, 1996, the United Way converted its pension plan from a traditional defined benefit structure to a cash balance structure. *Id.* at Ex. B at Ex. 1 (UW 1127-1129); *see also* Ex. G at ¶ 6; Ex. H at ¶ 7. Although the structure of the Plan changed going forward from January 1, 1996, the Plan provided that a participant would not lose the retirement benefit he had accrued, if any, prior to the date of conversion. *Id.* at Ex. 1. The Plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 *et seq.* *See* Defs.' Mot. for Sum. Judg. at 4.

In 2001, George Beatty ("Beatty")—an attorney and Blackmer's brother-in-law— began writing to the United Way on Blackmer's behalf, asserting that if Blackmer commenced early retirement, Blackmer should receive more in benefits than the United Way estimated that he would receive under the Plan. *See id.* at 19-20. He threatened the United Way with class action litigation because he thought that the calculation of Blackmer's proposed benefits under the Plan was "unfair." *Id.* at Ex. B at Ex. 1 (UW 4474). To support Blackmer's claim for additional Plan benefits, Beatty primarily relied upon an erroneous seven-word phrase in a voluminous 1996 Plan document. This erroneous phrase, which is the result of a scrivener's

4

error that a 2001 amendment and restatement of the Plan corrected, did not comport with (1) the Summary Plan Description ("SPD") for the Plan, (2) the Plan's design, (3) the United Way's intent in converting the Plan in 1996, or (4) how the Plan had been administered since the date of conversion. *See generally* Defs.' Mot. for Sum. Judg.

As early as mid-2003, Eva Cantarella ("Cantarella"), Humphrey's lead attorney in this case, joined Beatty in his representation of Blackmer, and both repeatedly contacted the United Way requesting calculations, Form 5500s, and other documents related to Blackmer's claim for additional proposed retirement benefits under the Plan. *Id.* at Ex. P at UW 0408-0409, UW 0469-0480, UW 0495-0497, UW 0499-0500, UW 0532-0546, UW 0547-0548, UW 0550. Cantarella then sent to the United Way Blackmer's benefit election forms, which confirmed his election to receive his retirement benefit in the form of a lump-sum payment to be rolled over into his IRA. Although Blackmer's election forms did not entitle anyone else to benefits following his death, Cantarella also sent to the United Way a beneficiary designation form that designated Humphrey as Blackmer's beneficiary. Defs.' Mot. for Sum. Judg. at Ex. P, UW 0493.

Beatty received his retirement benefits under the Plan in March 2004. Complaint ¶¶ 62, 20. On October 11, 2004, Blackmer died without pursuing any litigation for additional Plan benefits. *Id.*

However, on March 9, 2005, Cantarella filed the instant class action lawsuit on Humphrey's behalf. *See* Complaint. Humphrey testified that this lawsuit was filed solely because of Beatty's request. Ex. A at 84. She also testified that she had never talked with Beatty about the substance of this lawsuit and that she first talked to Cantarella only after the lawsuit had been filed. Ex. A at 44, 56. Additionally, Humphrey testified that this lawsuit was filed

without her ever reviewing or knowing of the contents of the Complaint or any of the Plan documents referred to in the Complaint. *Id.* at 109. Thus, this purported class action was filed even though Humphrey has absolutely *no* firsthand, personal knowledge of what was alleged in the Complaint or any of the Plan documents in issue.[2]

Plaintiff now moves for class certification. For the reasons set forth below, her motion should be denied in all respects.

## III.   ARGUMENT AND AUTHORITIES

### A.   Standard for class certification.

Federal Rule of Civil Procedure 23 governs class actions in federal court. A class action may be certified under Rule 23 only if the party seeking certification establishes that all four prerequisites of Rule 23(a) are satisfied: (1) the proposed class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the proposed class ("commonality"); (3) the claims or defenses of the representatives are typical of those of the proposed class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the proposed class ("adequacy"). FED. R. CIV. P. 23(a). District courts are required to conduct a "rigorous analysis" in determining whether the plaintiffs have presented sufficient evidence to these prerequisites. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982); *Unger v. Amedisys Inc.*, 401 F.3d 316, 320 (5th Cir. 2005).

A class that satisfies all of the requirements of Rule 23(a) must also satisfy at least one of the three requirements of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). A plaintiff seeking class certification under Rule 23(b)(1) must establish that "the prosecution of separate actions by or against individual members of the class would create a risk

---

[2] Obviously, Humphrey is "simply lending [her] name to a suit controlled entirely by [her] attorney[s]." *Kelley v. Mid-America Stables*, 139 F.R.D. 405, 409 (W.D. Okla. 1990).

of: (A) 'inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class,' FED. R. CIV. P. 23(b)(1)(A), or (B) 'adjudications with respect to individuals members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.'" FED. R. CIV. P. 23(b)(1)(B). A plaintiff seeking class certification under Rule 23(b)(2) must establish that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." FED. R. CIV. P. 23(b)(2). If seeking class certification under Rule 23(b)(3), the plaintiff must establish that common questions of law or fact "predominate over" individual issues and that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3).

Humphrey bears the burden of establishing that all requirements of Rule 23 have been satisfied. *Unger*, 401 F.3d at 320; *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 481 (5th Cir. 2001). "Unsupported allegations that the case satisfies the requirements of Rule 23 are an insufficient basis for certifying a class action." *Kase v. Salomon Smith Barney, Inc.*, 218 F.R.D. 149, 152 (S.D. Tex. 2003). Humphrey is entitled to no presumptions in establishing Rule 23's requirements. *See Unger*, 401 F.3d at 321 ("The plain text of Rule 23 requires the court to 'find,' not merely assume, the facts favoring class certification."); *Berger*, 257 F.3d at 481 ("Adequacy is for the plaintiffs to demonstrate; it is not up to defendants to disprove the presumption of adequacy."); *see also Gen. Tel. Co. v. Falcon*, 457 U.S. at 160.

In determining whether class certification should be denied, the court may look beyond the pleadings, as it "must understand the claims, defenses, relevant facts, and applicable

substantive law in order to make a meaningful determination of the certification issues." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996); *Griffin v. GK Intelligent Sys., Inc.*, 196 F.R.D. 298, 300 (S.D. Tex. 2000). Indeed, a class may not be certified unless the court has taken a "close look" at the parties' claims and evidence in making its Rule 23 decision." *Unger*, 401 F.3d at 321 (quotations omitted). Where the requirements for class certification have not been demonstrated, it is improper to certify a class on the possibility that the required showing might be made at a later stage in the litigation. Federal courts have specifically rejected this "certify now and worry later" approach. *See Castano*, 84 F.3d at 742 ("Given the plaintiffs' burden, a court cannot rely on assurances of counsel that any problems with predominance or superiority can be overcome.") (citation omitted); *Windham v. Am. Brands, Inc.*, 565 F.2d 59, 70 (4th Cir. 1977) ("[W]here the court finds, on the basis of substantial evidence as here, that there are serious problems now appearing, it should not certify the class merely on the assurance of counsel that some solution will be found."); *Corley v. Entergy Corp.*, 220 F.R.D. 478, 485 (E.D. Tex. 2004) (quoting *Castano*, 84 F.3d at 742).

**B.     Humphrey cannot satisfy any of the express requirements of Rule 23(a).**

**1.     Humphrey cannot satisfy the adequacy requirement of Rule 23(a)(4).**

Humphrey has the burden to prove that she is an adequate class representative for the proposed class. The adequacy of class representation "lies at the heart of the rationale supporting [a] class action," *Johnson v. Shreveport Garment Co.*, 422 F. Supp. 526, 531 (W.D. La. 1976), *aff'd*, 577 F.2d 1132 (5th Cir. 1978), and cannot be presumed. Rule 23(a)(4) requires that the party seeking certification establish that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4); *see also Berger*, 257 F.3d at 481 ("Adequacy is for the plaintiffs to demonstrate; it is not up to defendants to disprove the presumption of adequacy.").

"[B]ecause absent class members are conclusively bound by the judgment in any class action brought on their behalf, the court must be especially vigilant to ensure that the due process rights of all class members are safeguarded through adequate representation at all times." *Berger*, 257 F.3d at 480; *see also Ogden v. AmeriCredit Corp.*, 225 F.R.D. 529, 532 (N.D. Tex. 2005). Accordingly, the Fifth Circuit has interpreted Rule 23(a)(4) to mandate an inquiry not only into the "zeal and competence of the representative['s] counsel," but also into "the willingness and ability of the representative [] to take an active role in and control the litigation and to protect the interests of [the] absentees." *Berger,* 257 F.3d at 479 (citing *Horton v. Goose Greek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir. 1982)). However, Humphrey has failed to show that either she or her counsel will adequately serve the purported class.

### a.    Humphrey has virtually no knowledge or understanding of this case.

In order to participate in and direct the course of the litigation, a class representative must be sufficiently familiar with the facts of the case. *Berger*, 257 F.3d at 482-83; *Krim v. pcOrder.com, Inc.*, 210 F.R.D. 581, 587 (W.D. Tex. 2002). The inquiry into the knowledge and understanding of the representative "is to ensure that the party is not simply lending his name to a suit controlled entirely by the class attorney; the named party must be an adequate representative in addition to having adequate counsel." *Kelley v. Mid-America Racing Stables, Inc.*, 139 F.R.D 405, 410 (W.D. Okla. 1990) (quoting 7A C. Wright, A. Miller, M.K. Kane, FEDERAL PRACTICE AND PROCEDURE § 1766 (1986)). A class representative is inadequate when the evidence demonstrates that his or her understanding of the case is "limited to derivative knowledge acquired solely from counsel." *Berger*, 257 F.3d at 483 n.18 ("[I]t is not enough that plaintiff's counsel are competent if the plaintiffs themselves almost totally lack familiarity with the facts of the case."); *Ogden*, 225 F.R.D. at 535; *Krim*, 210 F.R.D. at 587; *Kassover v.*

*Computer Depot, Inc.*, 691 F. Supp. 1205, 1213-14 (D. Minn. 1987), *aff'd*, 902 F.2d 1571 (8th Cir. 1990)(table).

Accordingly, to demonstrate adequacy for class certification, a class representative must establish that he or she possesses a sufficient level of personal knowledge and understanding, independent of that given to him or her by counsel, to be capable of "controlling" or "prosecuting" the litigation on behalf of the other class members. *Berger*, 257 F.3d at 482-83. Following this directive, courts have denied class certification when the evidence establishes that the proposed representative lacks a basic understanding of his or her case.

For example, in *Rolex Employees Retirement Trust v. Mentor Graphics Corporation*, 136 F.R.D. 658, 666 (D. Or. 1991), the court determined that the proposed class representative was not adequate where the plaintiff was "unfamiliar with the basic elements of the case, including what the allegations of the complaint [were]." Likewise, in *Ogden*, 225 F.R.D. at 533-34, the court held that the proposed lead plaintiff was unsuitable for the class in part because the plaintiff was unable to state facts supporting her claims, including her claim that defendants "failed to comply with ERISA." Specifically, the court found that plaintiff had "no factual knowledge, beyond knowing that money was lost, to support the allegations in her complaint." *Id.* at 535. The court noted that "the vast majority of knowledge that [the plaintiff did] possess" was given to her by her counsel. *Id.* The court also noted that the plaintiff was unable to identify who would be included within the putative class. *Id.*

Plaintiffs were also deemed inadequate in *Kelley*, 139 F.R.D. at 409, a securities fraud case involving three potential class representatives. One of the potential class representatives conceded that he had no knowledge that defendants had "cheated" him and that

he had no basis for understanding his claims beyond information he learned from his counsel. *Id.* at 410. Based on the record, the court determined that the two other plaintiffs also had very limited personal knowledge of the claims in the lawsuit. *Id.* at 410. All three plaintiffs admitted that the only reason each of them consulted an attorney in the first place was because a stockbroker suggested that they do so. *Id.* The court concluded that because "there [was] substantial question that plaintiffs themselves [understood] much more than that they were involved in a bad business deal," the plaintiffs failed to carry their burden of proof on adequacy. *Id.; see also Krim*, 210 F.R.D. at 588 (holding that a proposed class representative was not adequate where he "derived most, if not all, of his understanding of [the] case, his role in it, and the nature of a class action from his attorneys").

In the present case, Humphrey's woefully inadequate understanding of her case is comparable to that of the plaintiffs in *Rolex*, *Ogden* and *Kelley*. Humphrey admittedly has no firsthand, personal knowledge of the claims alleged in her Complaint, and she is unable to state facts supporting her claims. Although Humphrey testified that poor eyesight has kept her from reading the Complaint and other documents involved in the lawsuit, she has failed to make any effort to learn about the contents of these documents by either asking her attorney about the documents or asking for the documents to be read to her. Ex. A at 81, 100, 105-109. Humphrey plainly testified that she has no knowledge of *any* of the allegations in her Complaint:

> Q.    . . . . Did you ask your attorney to tell you what was in this lawsuit paper [the Complaint] that got filed?
> A.    No.
> Q:    Okay.  Did you ask your attorney to tell you what was in the lawsuit paper after it got filed?
> A:    No.
> Q:    Okay.  Did you ever ask anybody to tell you what was in this lawsuit papers [sic] that you filed?
> A:    No, no.
> Q:    Okay.  So, you have no idea what's in here?

> A.      No.

*Id.* at 109.

Humphrey's understanding of the claims in this case is premised solely upon sheer rudimentary hearsay. She testified that she believed Plan participants "were promised the old plan with the new plan; and they only was [sic] paid the old plan instead of the new plan, too," but she admits that she gained this understanding only from what Blackmer told her and that she has not done anything whatsoever to independently verify these facts herself. *Id.* at 21, 73-76. Additionally, Humphrey does not know what a cash balance plan or a defined benefit plan is, or how either type of plan works. *Id.* at 62-63. While she contends that she is entitled to get the "B side of [a retirement] pension," she does not know the difference between the "A side" or the "B side." *Id.* at 99.[3]

Any other knowledge that Humphrey has about the case came from her counsel, Cantarella. For instance, Humphrey's understanding of the potential size of the class comes solely from her attorney, for Humphrey has done nothing on her own to check the accuracy of her attorney's asserted number. *Id.* at 65. Humphrey also testified that her attorney is her *only* source for information on the progress of her case:

> Q.      . . . . So how do you keep track of what's going on in this case?
> A.      I rely on my attorney, Eva.
> Q.      Okay. So, the only way you know of what's going on in this case is from what Eva tells you?
> A.      Yes.

*Id.* at 44. Humphrey does not herself keep a file or record of documents involved in this case. *Id.* at 45. She testified that the only knowledge she has about *any* plan document involved in this

---

[3] Humphrey's lack of knowledge of claims is further evidenced by her failure to attest to her interrogatory responses in this case. *See* Ex. B. Her failure to so attest also belies her assertion that she "actively participated" in these responses. *See* Pl.'s Mot. for Class Cert. at 13.

case, which would include the 96 Plan at issue, is through what her attorney, Cantarella, has told her.[4]  *Id.* at 116.

Even if the derivative knowledge that Humphrey obtained from Blackmer and Cantarella could be considered, however, Humphrey's understanding of her case is less than basic.  In her deposition, she did not recall when she filed her lawsuit, *id.* at 42, and she did not know that the lawsuit was initially filed in her name, not Blackmer's.  *Id.* at 20.  Humphrey also testified that she does not know what a class action is and that she has never heard of ERISA.  *Id.* at 27-30.  She is unable to accurately and independently identify important details associated with the case, such as who might be included in the putative class.  *Id.*  Most importantly, Humphrey has *no* understanding of the duties of a class representative:

> Q.   You're asking to be the class representative, right?
> A.   Yes.
> Q.   Okay.  What are your duties as a class representative?
> A.   I do not know.
> Q.   Okay.  Do you know what you're supposed to be doing as a proposed class representative?
> A.   No.

*Id.* at 69-70.[5]

Humphrey's utter lack of knowledge regarding her case may be explained to some extent by a lack of interest.  It was not Humphrey's idea to file this lawsuit; as Humphrey has explained, she filed the lawsuit at the request of Blackmer's brother-in-law, Beatty, an attorney:

> Q.   If Mr. Beatty had [not] asked you to do this, would you have done this on your own, filed this lawsuit?
> A.   No.
> Q.   So, the only reason you're doing this is because Mr. Beatty asked you to?
> A.   That's exactly right.

---

[4]  In fact, the only plan document or document related to this case that Humphrey's counsel talked with her about is the 96 Plan at issue. Ex. A at pp. 80-81, 105-09, 114-117.
[5]  Upon questioning by her own counsel, Humphrey said that she wanted "all the people that are in this class action suit to get their money, too." Ex. A at 103-04.

*Id.* at 84.[6]

Plaintiff's counsel points out that a putative class representative need not possess any "level of experience, expertise, wealth, or intellect, or a level of knowledge and understanding, beyond that required by [] long standing [sic] standards for [R]ule 23." Pl.'s Mot. for Class Cert. at 11 (quotations omitted)). However, Rule 23(a)(4) requires that a putative class representative have *more* than a simple understanding that he or she was "'involved in a bad business deal.'" *Berger*, 257 F.3d at 483 (quoting *Kelley*, 139 F.R.D. at 410).

The evidence demonstrates that Humphrey has little understanding of this litigation beyond her belief that Blackmer was involved in "a bad business deal." Like the plaintiffs in *Kelley*, who were advised by their stockbroker to consult an attorney, 139 F.R.D. at 410, Humphrey pursued this lawsuit only at Beatty's prompting. Humphrey has no personal knowledge of the facts in this case. She has only the hearsay knowledge passed on by Blackmer, and there can be no doubt that Humphrey is simply lending her name to a lawsuit that has been orchestrated and is controlled completely by her attorneys. *See id.* at 410. Because Humphrey lacks sufficient personal knowledge and understanding of the factual issues underlying this case, she cannot adequately represent the interests of the proposed class.

**b.    Humphrey has exercised no control over this litigation.**

Even if Humphrey did possess sufficient familiarity with the facts of this case, she cannot adequately serve the interests of the proposed class because she has absolutely no control over this litigation. Class representatives "must satisfy the court that they, and not counsel, are directing the litigation." *Unger*, 401 F.3d at 321; *Berger*, 257 F.3d at 479. Indeed, "[c]lass action lawsuits are intended to serve as a vehicle for capable, committed advocates to pursue the

---

[6]  In response to her own counsel's questions, Humphrey later said that she also wanted to file this lawsuit because she "felt that the other employees in the plan did not get their money." Ex. A at 104.

goals of the class members through counsel, not for capable, committed counsel to pursue their own goals through those class members." *Berger*, 257 F.3d at 484.  As such, an individual is not an adequate class representative if he or she has so little "'involvement in the class action that [he or she] would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys.'" *Griffin*, 196 F.R.D. at 301 (citation omitted).

Several factors have led courts to deny class certification based on the class representative's insufficient control over the litigation at hand.  Three such factors bear on the adequacy of Humphrey as the class representative.  First, courts have held that where the putative class representative has initiated the attorney-client relationship with his or her attorneys only in response to a solicitation by the attorneys, and the representative has failed to investigate the attorney's experience or seek any references, these facts weigh against a finding of adequacy. *Ogden*, 225 F.R.D. at 535.  Second, courts have indicated that a plaintiff has insufficient control where a plaintiff's involvement did not begin "until after the basic groundwork had been laid," *Rolex*, 136 F.R.D. at 666, and where the plaintiff "contributed nothing to the drafting of the complaint." *Id; see also Krim*, 210 F.R.D. at 588 (holding that a proposed class representative was not adequate where he "contributed nothing to the factual allegations in [the] lawsuit"). Third, courts have determined that a class representative's willingness to "leave the conduct of the litigation to [his or her] attorneys to vigorously pursue the case" supports a denial of class certification. *In re Quarterdeck Office Sys., Inc. Sec. Litig.*, No. CV 92-3970-DWW(GHKX), 1993 WL 623310, at *6 (C.D. Cal. Sept. 30, 1993) (Attached as Ex. C).  In the same vein, courts have concluded that a putative class representative who takes little supervisory role over counsel and has little or no participation in litigation decisions cannot adequately protect the interests of class. *Griffin*, 196 F.R.D. at 302; *Ballan v. Upjohn Co.*, 159 F.R.D. 473, 486 (W.D. Mich.

1994).  An evaluation of each of these factors reveals that Humphrey has *not* exercised sufficient control of the litigation to adequately represent the proposed class.

Humphrey entered the attorney-client relationship with her attorneys only in response to a solicitation from her current counsel.  Ex. A at 46-47.  Humphrey never contacted Hertz, Schram & Saretsky about representing her in this case.  *Id.* at 46.  Rather, Cantarella initiated contact with Humphrey in approximately March 2005, *id.*, after Cantarella had spent more than a year and a half working (at least since June 2003) with Beatty on this case.

Moreover, Humphrey has entirely failed to investigate her attorneys' experience or to seek any references.  *Id.* at 66.  As a result, she knows nothing about her attorneys' experience with class actions or ERISA litigation:

> Q.   What do you know about the quality of your attorneys' work in general?
> A.   Nothing.
> Q.   Okay.  Do you know anything about your attorneys' experiences with class actions?
> A.   No.
> Q.   You never asked them about their experiences . . . with class actions?
> A.   No.
> Q.   Okay.  Do you know anything about your attorneys' experience with ERISA litigation?
> A.   No.
> Q.   Okay.  So you didn't ask them about their expertise with ERISA litigation, did you - -
> A.   No. . . .
> Q.   Did you ask for any references about these lawyers that represent you?
> A.   No.

*Id.* at 66, ll. 7-23.  These facts weigh against a finding of *Humphrey* as an adequate class representative.  *See Ogden*, 225 F.R.D. at 535.

Humphrey's lack of control over this lawsuit is also evidenced by the late date at which she became involved and by the fact that she has contributed nothing to any aspect of this lawsuit except her name.  Although the Complaint in this case was not filed until March 9, 2005

and Humphrey was not contacted by Cantarella until after the Complaint was filed, *see* Ex. A at 56, Beatty began laying the groundwork for the case before June 2001, and, as noted above, Cantarella had joined Beatty in his representation of Blackmer by at least June 2003—nearly two years before the suit was filed.

After all, it was not Humphrey's idea to file a class action. *Id.* at 47, 97. It was only after Blackmer's death and at Beatty's request that Humphrey became involved in this suit. Humphrey did not contribute anything to the factual allegations of her Complaint, *id.* at 69, nor did she learn its contents before it was filed by her attorneys. *Id.* at 81.

Significantly, Humphrey has demonstrated a willingness to allow her attorneys to manage *every* detail of this litigation. Humphrey admits that she has done *nothing to control the litigation* and that she has *not made any decisions* about the litigation:

> Q. What have you done to make sure that your attorneys are properly representing your interests in this case?
> A. Nothing.
> Q. What have you done to make sure that your attorneys are properly representing the interests of the proposed class in this case?
> A. Nothing. . . .
> Q: Have you done anything to control the litigation in this case?
> A. No.
> Q. Have you made any decisions concerning the course of this litigation?
> A. No.

*Id.* at 67, 70. Most telling is that she has done *absolutely nothing* to ensure that the interests of the proposed class members are being protected. *Id.* at 67. Instead, Humphrey has chosen to rely solely on her attorneys, whose ability or experience she knows nothing about to prosecute and control this lawsuit. *Id.* at 66.

Rule 23 mandates a class representative who is in control of the litigation. As the evidence establishes, however, Humphrey has failed to actively participate in, let alone to exercise any control over, this litigation, and thus she has not established that she can serve "the

necessary role of 'check[ing] the otherwise unfettered discretion of counsel in prosecuting the suit.'" *Welling v. Alexy*, 155 F.R.D. 654, 659 (N.D. Cal. 1994) (quoting *Weisnam v. Darneille*, 78 F.R.D. 669, 671 (S.D.N.Y. 1978)).

 As a result of Humphrey's willingness to leave her attorneys in complete control, Humphrey has refrained from participating in litigation decisions, and Humphrey has failed to properly supervise her counsel. Despite the fact that Cantarella is Humphrey's only source of information about her case, Humphrey has not asked Cantarella to tell Humphrey about her case; she merely accepts what Cantarella *chooses* to tell her. Humphrey Depo. at 70. In the thirteen months since this case has been filed, Humphrey has not once called Cantarella. *Id.* at 60. Although Cantarella supposedly spoke with Humphrey every day for a three-week period, all of these calls occurred in the three weeks preceding Humphrey's deposition. *Id.* at 59-60. Before that time, Humphrey's contact with Cantarella was minimal, at best. *See id.*[7]

 Humphrey also has relied solely on her attorneys to make several important financial determinations without her input. Humphrey has no idea how the amount of her own individual damages were calculated, *id.* at 68-69, and her attorneys alone have determined the amount of money the class should recover. *Id.* at 29. Humphrey has done nothing independent of her attorneys to determine the appropriate amount of relief to seek for the class. *Id.*

 Moreover, Humphrey did not negotiate with her attorneys to determine how much of the putative class's potential recovery the attorneys will receive. *Id.* at 49. Humphrey has no idea how much money her attorneys have spent thus far prosecuting this case. *Id.* at 22. She does not know what costs are included in the litigation, and she wants to leave it up to "the Court" to decide how costs will be paid. *Id.* at 50. Humphrey's failure to monitor her attorneys

---

[7] Additionally, Humphrey has never met or spoken with any of the other attorneys at Hertz, Schram & Saretsky who are supposedly representing her in this case. Ex. A at 61, 85.

is strong evidence of her total lack of participation in the litigation of her claims. *See Ogden*, 225 F.R.D. at 535.

Instead of demonstrating her "willingness and ability" to act as a class representative, the evidence clearly establishes that Humphrey lacks the requisite level of involvement necessary for the significant responsibility that she seeks to assume. *See Ogden*, 225 F.R.D. at 537. Indeed, her total lack of participation in and contributions to this litigation demonstrate that she is merely "lending [her] name to a suit controlled entirely by the class attorney[s]." *Kelley*, 139 F.R.D. at 410. Accordingly, Humphrey cannot establish that she has exercised sufficient control to adequately represent the proposed class.

>    **c.    Humphrey cannot establish that her counsel will adequately serve the class.**

To satisfy Rule 23, Humphrey also must prove that she, her counsel, and the relationship between the two, are adequate to protect the interests of absent class members. *Stirman v. Exxon Corp.*, 280 F.3d 554, 563 (5th Cir. 2002). Thus, in addition to proving herself an adequate representative of the proposed class, Humphrey has the burden of establishing that her counsel will adequately safeguard the interests of the absent class members. *See Berger*, 257 F.3d at 481 (noting the well-established rule that "the party seeking certification bears the burden of establishing all [elements] of rule 23(a)") (emphasis omitted). To meet this burden, Humphrey must show that her counsel is "qualified, experienced, and generally able to conduct the litigation." *See Brame v. Ray Bills Fin. Corp.*, 85 F.R.D. 568, 575 (N.D.N.Y. 1979) (citations omitted).

Despite Humphrey's burden with regard to the adequacy of class counsel, Humphrey knew nothing whatsoever about the adequacy of proposed class counsel a year after this lawsuit was filed, and she has made no inquiry whatsoever into her attorneys' experience

and qualifications. Ex. A at 66.  Indeed, she testified that she did not talk to Cantarella until after this lawsuit was filed and that she has never met—or even talked to—Bradley Schram ("Schram") or Robert Geller ("Geller"), the other proposed class counsel.[8]  *Id.* at 61.

Moreover, regardless of the experience of proposed class counsel hyped in Humphrey's motion, the actions of Humphrey's counsel in this lawsuit reveal that they cannot adequately serve the interests of the proposed class.  Throughout the course of this litigation, Humphrey's counsel has failed to explain important documents to her.  Moreover, they have continually misrepresented or distorted the law and the facts.[9]  *See generally* Defs.' Mot. for Sum. Judg. & Defs.' Resp. to Pl.'s Mot. for Sum. Judg.  Because neither Humphrey nor her counsel can adequately protect the interests of the proposed class, Plaintiff's Motion for Class Certification must be denied.

### 2.    Humphrey cannot establish the numerosity requirement of Rule 23(a)(1).

To prove numerosity, Humphrey must do more than focus on raw numbers—she must establish that the class is so numerous that joinder is impracticable.  *Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir. 1980) ("The basic question is practicability of joinder, not number of interested persons per se.").  Impracticable means that "joinder would be extremely difficult or inconvenient and depends on the circumstances of the case, not merely the sheer numbers of putative class members." *Gosselink v. Am. Tel. & Tel., Inc.,* 1999 WL 33737340, at *8 (S.D. Tex. Aug. 9, 1999) (attached as Ex. E) (*citing Zeidman v. J. Ray McDermott & Co., Inc.,* 651

---

[8]  Additionally, Humphrey testified that she understands that Schram and Geller are her attorneys in this case only because Cantarella told her so.  *Id.* at 85.

[9]  For example, in the section of her motion which details the experience of her counsel, Humphrey touts her counsel's work in *Crosby v. Bowater Inc. Retirement Plan for Salaried Employees of Great Northern Paper, Inc.,* 212 F.R.D. 350 (W.D. Mich. 2002), and represents that this case is now pending in federal court in Illinois. *See* Pl.'s Mot. at 8-9 & n.4.  What Humphrey fails to mention, however, is that this case was dismissed from federal court in Michigan for lack of subject matter jurisdiction, was then refiled in federal court in Illinois, and currently is subject to a motion to dismiss in that court.  *See* Ex. F.  Additionally, although Humphrey discusses the Michigan federal court's decision to grant the class representative's motion for costs and attorney fees, the Sixth Circuit reversed that decision on appeal. Ex. G.

F.2d 1030, 1038 (5th Cir. 1981)).  To show that joinder is impracticable, Humphrey must present the Court with more than speculative information regarding the size of the proposed class; Humphrey must also establish the following "indicia of impracticability":  (1) that potential class members are geographically dispersed; (2) that class members would be difficult to identify; and (3) the nature of action and size of each plaintiff's claim.  *See Hernandez v. Alexander*, 152 F.R.D. 192, 194–95 (D. Nev. 1993) (refusing to find numerosity where the plaintiff failed to put forth evidence of the "indicia of impracticability"); *Zeidman,* 651 F.2d at 1038; *Garcia*, 618 F.2d at 267 ("Practicability of joinder depends on size of the class, ease of identifying its members and determining their addresses, facility of making service on them if joined and their geographic dispersion."); *see also Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624–25 (5th Cir. 1999).

> **a.**      **Humphrey proffers only speculative numbers regarding the size of the proposed class, and, thus, she makes an insufficient showing that joinder is impracticable.**

With regard to the numerosity requirement of Rule 23(a), Humphrey does little more than speculate that there are at least 60 class members.  Humphrey seeks to certify a class composed of

> [A]ll Participants or Former Participants (as those terms are defined in the Plan), and beneficiaries of such Participants or Former Participants, who (1) as of 12/31/95, had accrued a pension under the Prior Plan (as defined in the Plan), (2) were or hereafter are eligible for an Early Retirement Pension under the Plan ("ERP"), and (3) either received or are eligible to receive an ERP or hereafter become eligible to receive an ERP.

*See* Pl.'s Mot. for Class Cert. at 19.

This purported overly-broad class includes participants who actually received early retirement benefits, as well as those who are merely eligible for early retirement but may choose not to commence their benefits until they reach normal retirement age.   Thus,

Humphrey's proposed class necessarily includes participants (or beneficiaries) who will never have a claim for any early retirement benefits or whose claims are not yet ripe. Because Humphrey's proposed class includes members for whom no case or controversy exists or may ever exist, her attempt to certify this highly speculative and overly broad class simply cannot satisfy Rule 23's numerosity requirement.

Additionally, Humphrey would have this Court believe that numerosity is presumed at the "magic number" of 40. That is not and never has been the law in the Fifth Circuit. *See Unger*, 401 F.3d at 321 ("The plain text of Rule 23 requires the court to 'find,' not merely assume, the facts favoring class certification.").[10] Not only does Humphrey rely solely on an incorrect "presumption of numerosity," but her speculative and conclusory motion is wholly without *any* supporting evidence whatsoever of the "indicia of impracticability." As a result, Humphrey has failed to demonstrate that joinder is impracticable.[11] For that reason alone, she has failed to carry her burden, and her motion must be denied. *See Jeffries v. Pension Trust Fund of Pension Hospitalization and Benefit Plan of Elec. Indus.*, 172 F. Supp. 2d 389, 394 (S.D.N.Y. 2001) (refusing to certify a class because the plaintiff failed to prove the impracticability factors such as geographic dispersion and class member financial resources).

---

[10] Despite Humphrey's suggestion to the contrary, impracticability is not automatically presumed if the proposed class is comprised of at least 40 members. *See, e.g., Barcelo v. Brown*, 78 F.R.D. 531, 535 (D.P.R. 1978) (class action certification unnecessary where there were approximately 150 potential class members); *Aiello v. City of Wilmington, Del.*, 426 F. Supp. 1272, 1282-83 (D. Del. 1976) (250 potential class members are not so numerous as to make joinder impracticable); *United Steelworkers of Am., Local 8024 Union v. Jarl Extrusions, Inc.*, 405 F. Supp. 302, 303 (E.D. Tenn. 1975), *aff'd*, 527 F.2d 648 (6th Cir. 1975) (joinder of 85 potential class members practicable); *Van Allen v. Circle K Corp.*, 58 F.R.D. 562, 564 (C.D. Cal. 1972) (149 potential class members would not create an unmanageable piece of litigation); *Minersville Coal Co. v. Anthracite Export Ass'n*, 55 F.R.D. 426, 428 (M.D. Pa. 1971) (330 potential class members are not so numerous as to make joinder impracticable); *Utah v. American Pipe and Constr. Co.*, 49 F.R.D. 17, 21 (C.D. Cal. 1969) (joinder of 350 plaintiffs practicable); *Bennett v. United States*, 266 F. Supp. 627, 629 (W.D. Okla. 1965) (potential claims of all residents and property owners in Oklahoma City not so numerous as to require a class action).

[11] As with all other issues of this case, Humphrey herself cannot explain how the class size was estimated. Ex. A at pg. 65.

**b.     Humphrey offers no evidence that putative class members have exhausted their administrative remedies.**

In addition, Humphrey falls short of proving Rule 23's numerosity requirement because she has no evidence that putative class members have exhausted their administrative remedies, which is a threshold requirement of an ERISA section 502(a)(1)(B) claim.[12] *Medina v. Anthem Life Ins. Co.*, 983 F.2d 29, (5th Cir. 1993) (holding that the exhaustion of administrative remedies is a threshold requirement of a Section 502(a)(1)(B) claim); *see also Radford v. Gen. Dynamics Corp.*, 151 F.3d 396, 399 (5th Cir. 1998).  For this reason, the numerosity requirement of Rule 23(a)(1) is not satisfied unless Humphrey proffers "some evidence of the number of class members who have exhausted their administrative remedies, if any, or a reasonable estimate of such an amount."  *Gosselink*, 1999 WL 33737340, at *8; *see also Coffin v. Bowater Inc.*, 228 F.R.D. 397, 404 (D. Me. 2005) (requiring potential class members to exhaust administrative remedies before becoming part of an ERISA plaintiff class).

Defendants anticipate that Humphrey will argue that her failure to show how many members of the class have exhausted their administrative remedies is excused under the futility exception.  However, in the Fifth Circuit, "[f]utility of appeal will serve as an exception to the administrative exhaustion requirement only if a plaintiff can make a clear showing that the plan administrators harbor bitterness and hostility for the claimant."  *Brown*, 881 F. Supp. at 259 (*citing Denton v. First Nat'l. Bank*, 765 F.2d 1295, 1303 (5th Cir. 1985)).  Moreover, "[m]erely alleging that an appeal would be futile or that the administrators harbor bitterness and hostility is insufficient to create an exception to the general rule."  *Id.*

---

[12]   The Fifth Circuit has explained that the policies underlying the exhaustion requirement are to (1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and (3) assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not *de novo. Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1279 (5th Cir.1990); *Porter v. Atchison Topeka and Santa Fe Ry. Co.*, 768 F. Supp. 571, 575 (N.D. Tex. 1991).  Essentially, Congress seeks to ensure "that not every ERISA action becomes a federal case." *Medina*, 983 F.2d at 33.

Nowhere in Humphrey's Complaint or her motion for class certification does she proffer any evidence of the number of class members who have exhausted their administrative remedies.  Nor does Humphrey allege that Defendants harbored any bitterness or hostility toward her, Blackmer, or any member of the proposed class.  This failure to proffer any such evidence is fatal to her class certification attempt.

      **c.**      **Humphrey should not be allowed additional discovery relevant to numerosity.**

Furthermore, this Court should not allow Humphrey additional discovery to support numerosity or grant her request to force Defendants to provide contact information for potential class members of a class that is grossly overbroad as defined.  As early as June 24, 2003, Cantarella, Humphrey's lead attorney in this case, joined Beatty in his representation of Blackmer, and both repeatedly contacted the United Way requesting calculations, Form 5500s, and other documents.  After Blackmer's death, and only at Beatty's request, Humphrey filed suit against the United Way and the Plan on March 9, 2005.  Humphrey's counsel has been working on this case for almost three years, and Humphrey has had over a year since the filing of this lawsuit to investigate this case and locate class members to satisfy the numerosity requirement. Despite the fact that Humphrey and her counsel have done *nothing* to identify or locate class members, they now want Defendants to do their work for them by asking this Court to order Defendants to produce information so that potential class members can be located.

Although Humphrey has had ample opportunity to obtain and present evidence supporting the numerosity requirement of Rule 23(a)(1), she has wholly failed to do so.  Her estimate of class numbers is entirely speculative, she has not even attempted to put forth evidence of the relevant factors to show that joinder is impracticable, and she has proffered no evidence of the number of class members who have exhausted their administrative remedies.

24

Accordingly, Humphrey's motion for class certification should be denied. *See Kase v. Salomon Smith Barney, Inc.*, 218 F.R.D. 149, 154-55 (S.D. Tex. 2003) ("If Kase has not conducted sufficient discovery in this case, the responsibility for this oversight is solely his.").

### 3.   Humphrey cannot satisfy the typicality requirement under Rule 23(a).

Under Rule 23(a)(3), the Court is required to examine whether there is sufficient "similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Stirman*, 280 F.3d at 562.   The existence of sufficient similarity between the theories of the class representative and the class ensures that when the class representative pursues his or her own interests, that representative also pursues the interests of the class. *See Gen. Tele. Co. of the Sw. v. Falcon*, 457 U.S. 147, 158, n.13 (1982) (explaining that, under the typicality requirement, a plaintiff, in pursuing her own interests, must also advance the interests of the class).   When the plaintiffs' claims or the defendants' defenses thereto "will be dominated by individual evidence," the typicality requirement of Rule 23(a)(3) is not satisfied. *Martin v. Home Depot U.S.A., Inc.*, 225 F.R.D. 198, 201 (W.D. Tex. 2004); *Ardoin v. Stine Lumber Co.*, 220 F.R.D. 459, 464-65 (W.D. La. 2004); *In re FirstPlus Fin. Group, Inc. Sec. Litig.*, No. Civ.A.3:98-CV-2551-M, 2002 WL 31415951, at *5 (N.D. Tex. Oct. 28, 2002) (attached as Ex. D).

Because the claims alleged in this case and Defendants' defenses necessarily are dominated by individual evidence, Humphrey's motion for class certification should be denied.

a.   **Although each class member must show reliance on the Plan documents to support his or her claim, Humphrey admits that she did not rely on the Plan documents.**

As Defendants pointed out in their motion for summary judgment, the Summary Plan Description ("SPD") provided to Plan participants unambiguously explains the method under which retirement benefits would be paid.   The mistaken "plus" language contained in Section 6.5 of the 96 Plan (the early retirement provision) goes against the language of the SPD, the design of the Plan, the intent of the United Way in adopting the Plan, and how the Plan has been administered since its effective date of January 1, 1996.   This mistaken "plus" language is thus merely a scrivener's error for which retroactive reformation of the mistake is warranted.   In recognizing the availability of equitable reformation of an ERISA plan provision, courts have considered factors such as (a) whether a drafting error unintentionally created a windfall for either the participant or the plan and (b) whether the participant reasonably relied upon the error to his detriment.   *See Int'l Union of Elec., Elec., Salaried, Mach. & Furniture Workers v. Murata Erie N. Am. Inc.* ("IUE"), 980 F.2d 889, 907-08 (3d Cir. 1992); *Air Line Pilots v. Shuttle, Inc.*, 55 F. Supp.2d 47, 53-54 (D.D.C. 1999).

Where a defense (such as scrivener's error) involves the element of reliance, typicality is difficult to establish.   *Ford v. Nylcare Health Plans of the Gulf Coast, Inc.*, 190 F.R.D. 422, 425–26 (S.D. Tex. 1999), demonstrates this difficulty.   In *Ford*, a physician brought a proposed class action against health maintenance organizations ("HMOs") under the Lanham Act.   *Id.* at 424.   To sustain his Lanham Act claim on behalf of the proposed class, the named plaintiff had to show that certain advertisements were false or had a tendency to deceive the intended audience.   *Id.* at 426.   To do so, plaintiff was required to establish that class members relied upon the advertisements.   *Id.*   Because the questions of reliance required individual inquiry, the court found that the plaintiffs lacked the requisite typicality.   *Id.*

As in *Ford*, all members of the potential class in the present case *must* establish reliance to survive the defense of scrivener's error.  More specifically, the class representative and all other class members will be required to establish reliance upon the "plus" language in Section 6.5 of the 96 Plan.  Humphrey has no evidence even to suggest that anyone other than Humphrey's counsel, let alone Humphrey, Blackmer or any other Plan participant, has even seen the mistaken "plus" language in Section 6.5 of the 96 Plan, let alone relied upon it to his or her detriment.   Whether any alleged class member detrimentally relied on this language is an individual inquiry that must be undertaken for each proposed class member, and each proposed class member thus will be subject to unique inquiries that will likely become the focus of this litigation.  *See Tootle v. ARINC, Inc.*, 222 F.R.D. 88, 96-97 (D. Md. 2004) (denying class certification because individualized inquiries into reliance defeated typicality and commonality requirements under Rule 23(a)); *Edgington v. R.G. Dickinson & Co.*, 139 F.R.D. 183, 189-90 (D. Kan. 1991) (denying class certification because evidence showed that class representatives would be subject to unique defenses because they did not rely on alleged misrepresentations and omissions).

Despite the fact that each member of Humphrey's proposed class must establish reliance on the "plus" language to maintain their claims, there is affirmative evidence that Humphrey herself did not rely on the "plus" language.  Humphrey has admitted that she had never seen the 96 Plan documents and is relying solely upon what her counsel told her about the 96 Plan to allege that the mistake even exists. Ex. A at 64.  As such, Humphrey cannot establish that there is sufficient similarity between her own legal and remedial theories and the theories of the other proposed class members, and Humphrey cannot advance the interests of the class,

whose members may or may not be able to show reliance.   Accordingly, Humphrey cannot demonstrate that her claims are typical of the proposed class.

      **b.**     **Humphrey's failure to address the threshold requirement of exhaustion of remedies defeats typicality.**

In addition, Humphrey's claims are atypical claims because of the exhaustion-of-remedies requirement.   As previously discussed, certification of a class with respect to claims for plan benefits under ERISA does not relieve *each individual class member* of the duty to exhaust administrative remedies.   *See generally Gosselink*, 1999 WL 33737340, at *8.   No evidence exists that any participant other than Blackmer has filed a claim with the United Way requesting the payment of benefits under the mistaken "plus" language or has exhausted his administrative remedies in this regard.   As a result, Humphrey's standing to bring a claim for retirement benefits under the Plan makes her atypical of the class of plaintiffs whom she seeks to represent, and she cannot meet the requirements of Rule 23(a)(3).

    **4.**    **Humphrey cannot satisfy the commonality requirement of Rule 23(a)(2).**

Under Rule 23(a)(2), Humphrey must demonstrate that there are questions of law and fact common to the class.   Conclusory allegations of commonality are insufficient to satisfy the burden of proof for class certification.   *In re Am. Med. Sys.*, 75 F.3d 1069, 1080 (6th Cir. 1996).

Humphrey cannot satisfy the commonality requirement because she is the beneficiary of a participant who exhausted his administrative remedies.   As discussed in the preceding sections on numerosity and typicality, no evidence exists that any other class member has exhausted his or her administrative remedies with respect to claims for early retirement benefits under the Plan.   Hence, no claim by any other member of the proposed class for Plan benefits under ERISA Section 502(1)(B) will be ripe for adjudication until that member exhausts

his or her administrative remedies.  Therefore, Humphrey cannot establish commonality under Rule 23(a)(2).

**C.     Humphrey's speculative and overly-broad proposed class cannot satisfy the implied requirements of Rule 23(a).**

Rule 23(a) also mandates that the proponent of a class action must show that a class exists before the class can be certified.  A class "exists" only when the evidence shows that persons are capable of being identified as either in or out of the proposed class.  *See Chaffee v. Johnson*, 229 F. Supp. 445, 448 (S.D. Miss. 1964), *aff'd*, 352 F.2d 514 (5th Cir. 1965), *cert. denied*, 384 U.S. 956 (1966); *see also Wagner v. Cent. La. Elec. Co., Inc.*, 99 F.R.D. 279, 282 (E.D. La. 1983).  A class which is overly broad, *i.e.*, not defined so as to enable the court to determine whether a particular individual is a member of the class, does not "exist" for purposes of Rule 23(a).  *See DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970).

Humphrey asserts claims in this action as the purported representative of an overly broad class, which includes those persons who *may* be eligible for early retirement benefits at any point in the future, even if they opt to wait for normal retirement benefits instead. Moreover, Humphrey makes no distinction between class members who have filed claims for benefits and exhausted their administrative remedies, and those who have not.  Humphrey's proposed class thus is not sufficiently defined because this court would not be able to determine who is a class member and who is not.  Consequently, Humphrey cannot even satisfy the implied requirement of Rule 23(a) that a class "exists."

**D.      Humphrey is not entitled to class certification because she cannot satisfy the requirements of Rule 23(b).**

Even if Humphrey could satisfy the requirements of Rule 23(a) (which she cannot), class certification should be denied because Humphrey cannot satisfy the requirements of either Rule 23(b)(1)(A),[13] Rule 23(b)(2), or Rule 23(b)(3).

**1.      Humphrey's claims for money damages are unsuitable for class treatment under Rule 23(b)(1)(A).**

Class certification under Rule 23(b)(1)(A) is proper only when the party seeking certification can establish that "the prosecution of separate actions by or against individual members of the class would create a risk of . . . inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class." FED. R. CIV. P. 23(b)(1)(A). Rule 23(b)(1)(A) applies to cases in which the party opposing class certification is "obliged by law to treat the members of the class alike" or where such party "must treat all alike as a matter of practical necessity." *Amchem Prods., Inc.*, 521 U.S. at 614.

Rule 23(b)(1)(A) is designed to protect the defendant when "judgments entered in separate lawsuits would force [it] to comply with one court order yet violate another court order." *Corley*, 222 F.R.D. at 320; *Henry v. Cash Today, Inc.*, 199 F.R.D. 566, 570 (S.D. Tex. 2000). Moreover, class certification under this Rule is inappropriate when the plaintiff seeks predominantly money damages. *Corley*, 222 F.R.D. at 321; *Durrett v. John Deere Co.*, 150 F.R.D. 555, 559 (N.D. Tex. 1993) (citing *McDonnell-Douglas Corp. v. United States Dist. Ct. for Cent. Dist. of Cal.*, 523 F.2d 1083, 1086 (9th Cir. 1975)); *McBirney v. Autrey*, 106 F.R.D. 240, 245 (N.D. Tex. 1985); *see also Unger*, 401 F.3d 316, 320 (5th Cir. 2005) (explaining that for class actions seeking money damages Rule 23(b)(3), and not (b)(1) or (b)(2) is appropriate).

---

[13]  Humphrey does not seek certification under Rule 23(b)(1)(B).

### a.     Defendants oppose class certification.

If the defendant opposes certification under Rule 23(b)(1)(A), certification under that rule is inappropriate, and "the court should not certify [the] class over [the defendant's] objection." *Corley*, 222 F.R.D. at 320; *Ford*, 190 F.R.D. at 427 ("Because the defendants do not seek the protection of this section, it is not applicable in this case."); *Pettco Enters., Inc. v. White*, 162 F.R.D. 151, 155 (M.D. Ala. 1995) ("[I]t is inappropriate to certify a Rule 23(b)(1)(A) class over objection of the party opposing the class."); *Fogie v. Rent-A-Center, Inc.*, 867 F. Supp. 1398, 1403 (D. Minn. 1993) ("[T]he defendant may waive [the protection of Rule 23(b)(1)(A)] by opposing certification."); *Pruitt v. Allied Chem. Corp.*, 85 F.R.D. 100, 106-07 (E.D. Va. 1980) ("Where [the defendant] does not seek the protection of a (b)(1)(A) class action, as [the defendant] has chosen not to do in the present case, the availability of the class action asserted under Rule 23(b)(1)(A) is questionable.").

Defendants oppose certification of the proposed class under Rule 23(b)(1)(A). Accordingly, Humphrey's request for certification under this rule should be denied. *See Corley*, 222 F.R.D. at 321.

### b.     There is no evidence that separate actions will result if a class is not certified.

Before a class can be certified under Rule 23(b)(1)(A), "it must be ascertained that separate actions would result if the class was not certified pursuant to Rule 23(b)(1)." *In re Dennis Greenman Securities Litigation*, 829 F.3d 1539, 1544 (11th Cir. 1987); *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 564 (2d Cir. 1968); Wright, Miller & Kane, Federal Practice and Procedure § 1773, p. 427 (1986). Humphrey has brought forth no evidence that anyone one other than her counsel has even noticed the mistake in the Plan document. Humphrey thus has put forth no evidence to even remotely suggest that separate actions will result if the class is not

certified under Rule 23(b)(1)(A).  *See In re Dennis Greenman*, 829 F.2d at 1544 (finding threshold requirement of Rule 23(b)(1) satisfied where twenty-five separate actions were pending against the defendant at the time the district court certified the class).

### c.   Humphrey seeks predominately money damages.

Even if Defendants did not oppose such certification (which they do) or Humphrey had evidence that separate actions would result if the class was not certified under Rule 23(b)(1)(A), class certification under this rule would be improper because Humphrey seeks predominantly monetary damages.

Humphrey's testimony and her pleadings clearly show that she *only* seeks to recover money damages for the class.  Humphrey repeatedly testified that she is seeking to recover *only* money damages in this lawsuit.  Ex. A at 22.  In her Complaint, Humphrey asks the Court to order Defendants to:  (1) recompute early retirement benefits based on the mistaken "plus" language; (2) pay class members the difference; (3) pay costs and attorney's fees; and (4) pay post judgment interest.  *See* Complaint ¶122.  Nowhere in her Complaint does she ask for declaratory or injunctive relief.

Humphrey's attempt to masquerade her monetary claims as requests for injunctive and declaratory relief now are entirely disingenuous—and completely transparent.  Despite Humphrey's failure to even *mention* injunctive or declaratory relief in her Complaint, Humphrey now argues for the first time that Defendant's act of calculating damages qualifies as injunctive relief.[14]  Further defying logic, Humphrey couches her claim for monetary relief as declaratory relief based solely on the fact that she asks the Court to "declare" that benefits should be paid based on the mistaken "plus" language in Section 6.5 of the 96 Plan.  *See* Pl.'s Mot. for Class

---

[14]  Humphrey's argument carried to its logical extreme would mean that any request for money damages in any lawsuit would qualify as injunctive relief because *somebody* has to calculate damages.

Cert. at 17. And, to further gloss over her monetary claim, Humphrey now asserts that her request for the Court to order Defendants to produce a list of all known members of the class is injunctive relief, despite the fact that she never asked for such relief in her Complaint. *Id.*

In flagrant defiance of the Federal Rules' fair notice requirement for pleadings, Humphrey ostensibly asks this Court for declaratory and injunctive relief for the first time in her motion for class certification. Humphrey *plainly* is not seeking to regulate Defendant's conduct in this case—she is seeking money and money alone. *See Corley*, 222 F.R.D. 321 ("If injunctive relief is incidental to monetary relief, the plaintiff's main goal is to recover money damages for class members, not to regulate defendant's conduct."). Regardless of whether Humphrey has stated a claim for injunctive or declaratory relief (which she has not), her request for money damages on behalf of herself and the class is certainly the predominant relief sought, and thus her request for a class to be certified under Rule 23(b)(1)(A) should be denied.

### 2. Humphrey's claims for money damages are unsuitable for class treatment under Rule 23(b)(2).

To bring a class action under Rule 23(b)(2), Humphrey must demonstrate that her class action seeks predominantly injunctive or declaratory relief rather than money damages. *James v. City of Dallas, Tex.*, 254 F.3d 551, 570 (5th Cir. 2001); *see also Unger*, 401 F.3d 316, 320 (5th Cir. 2005) (explaining that for class actions seeking money damages Rule 23(b)(3), and not (b)(1) or (b)(2) is appropriate). "[M]onetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive or declaratory relief." *Allison*, 151 F.3d at 415. The Fifth Circuit explained in *Allison* that monetary damages are incidental when they flow directly from liability to the class as a whole and are capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each

member's circumstances. *See id.* If, however, one cannot calculate monetary damages on a uniform basis, monetary relief predominates over injunctive relief. *See id.*

Determining benefits under the 96 Plan at issue is a highly individualized and complex actuarial computation, based upon factors such as length of service and retirement age. Thus, in the event Humphrey were to prevail on her class claims, each class member's damages would have to be calculated individually. Consequently, Humphrey's claims are for money damages, as she herself testified, despite Humphrey's attempt now to place an injunctive and declaratory relief gloss on this case. *Compare Ford*, 190 F.R.D. at 428 (finding money damages were the predominant relief sought where plaintiff sought actual damages, punitive damages and attorneys fees), *with James*, 254 F.3d at 570 (injunctive relief was predominant in a civil rights action where plaintiffs requested seven injunctive remedies, such as canceling debt and filing a release of a lien in the public deeds records).

As one court explained, Rule 23(b)(2) involves claims in which the appropriate final relief does not relate exclusively or predominately to money damages, but rather regards final injunctive or corresponding declaratory relief. *Durrett v. John Deere Co.*, 150 F.R.D. 555, 559 (N.D. Tex. 1993). The court in *Durrett* explained that injunctive relief is typified by actions in the area of civil rights in which a defendant is charged with discriminating against a class whose members are usually incapable of specific enumeration. *Id.* at 559 (*citing Potts v. Flax*, 313 F.2d 284 (5th Cir. 1963)). The court in *Durrett* further explained that declaratory relief corresponds to injunctive relief when, as a practical matter, it affords injunctive relief or serves as a basis for later injunctive relief. *Id.*

Humphrey's request for Plan benefits can in no way be characterized as "injunctive relief." Moreover, Humphrey's request for the computation of benefits fails as a

request for declaratory relief because it does not afford injunctive relief "as a practical matter." Humphrey's claims are purely and solely for money damages, and what she mistakenly calls declaratory relief—that Defendants pay members based on the mistaken "plus"—is nothing more than her model for calculating money damages. For these reasons, Humphrey's motion for class certification under Rule 23(b)(2) should be denied.

### 3.       Humphrey's claims are unsuitable for class treatment under Rule 23(b)(3).

Under Rule 23(b)(3), class certification is appropriate *only* if Humphrey can establish (1) that questions common to the class members predominate over questions affecting only individual members, and (2) that class resolution is superior to alternative methods for adjudication of the controversy. FED. R. CIV. P. 23(b)(3). As with the other requirements of Rule 23, Humphrey bears the burden of establishing that the requirements of Rule 23(b)(3) are satisfied. "[A] court cannot rely on assurances of counsel that any problems with predominance or superiority can be overcome." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 742 (5th Cir. 1996); *Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.*, 215 F.R.D. 523, 529 (E.D. Tex. 2003), *aff'd*, 100 Fed. Appx. 296 (5th Cir. 2004).

The predominance and superiority standards under Rule 23(b)(3) are "more demanding than the commonality requirement of Rule 23(a), and as such, mandate[] caution, particularly where 'individual stakes are high and disparities among class members are great.'" *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 301-02 (5th Cir. 2003) (quoting *Amchem Prods., Inc.*, 521 U.S. at 625). These standards test "whether the proposed class[] [is] sufficiently cohesive to warrant adjudication by representation." *Bell Atl. Corp.*, 339 F.3d at 302 (quoting *Amchem Prods., Inc.*, 521 U.S. at 624-25).

a.    **Individual questions predominate over common class questions.**

In determining whether individualized issues will predominate over those common to the class, the court must consider "how a trial on the merits would be conducted if a class were certified." *Sandwich Chef of Tex., Inc. v. Reliance Nat'l Indem. Ins. Co.*, 319 F.3d 205, 218 (5th Cir. 2003). The court must "identify[] the substantive issues that will control the outcome, assessing which issues will predominate, and then determine[e] whether the issues are common to the class." *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 738 (5th Cir. 2003). If, after such analysis, the court determines that the issues involved would cause the proposed class to "'degenerat[e] into a series of individual trials,'" class certification is inappropriate. *Bell Atl. Corp.*, 339 F.3d at 302 (quoting *O'Sullivan*, 319 F.3d at 738); *Corley*, 220 F.R.D. at 485 ("[I]f the court must determine damages on an individual basis rather than on a class-wide basis, common issues do not predominate over individual issues.").

In lieu of any concrete proof that common questions predominate, Humphrey makes only the bald assertion that common questions "irrefutably" predominate over individual questions. *See* Pls.' Mot. for Class Cert. at 18. Humphrey thus attempts to satisfy her burden of proof under Rule 23(b)(3) through the use of only this perfunctory statement. Humphrey fails to address the fact that the Defendants' conduct, insofar as it allegedly relates to the elements of her claims, is *not* the only consideration for the Court under Rule 23(b)(3). Defendants' defense of scrivener's error mandates that each class member prove that he or she actually relied to his or her detriment on the mistake contained in the 96 Plan. *E.g.*, *Romero v. Allstate Corp.*, 404 F.3d 212, 226 (3d Cir. 2005); *In re Elec. Data Sys. Corp. ERISA Litig.*, 224 F.R.D. 613, 630 (E.D. Tex. 2004).

Claims that require plaintiffs to demonstrate reliance fail the predominance test when the proof of reliance is individualized. *E.g.*, *Unger v. Amedisys, Inc.*, 401 F.3d 316, 321

(5th Cir. 2005) ("If the circumstances surrounding each plaintiff's alleged reliance on fraudulent representations differ, then reliance is an issue that will have to be proven by each plaintiff, and the proposed class fails Rule 23(b)(3)'s predominance requirement."); *In re Elec. Data Servs. ERISA Litig.*, 224 F.R.D. at 630 (holding that ERISA misrepresentation claims were not certifiable as a class for this reason).  In Humphrey's case, the degree to which different class members did or did not rely on a plan document is an individual inquiry that must be undertaken for each alleged class member.[15]  As such, Humphrey's case should not be certified under Rule 23(b)(3).

Furthermore, Humphrey cannot satisfy predominance because of other important issues that require individual and specific attention, *e.g.*, the exhaustion of administrative remedies.  In the event Humphrey were successful on her underlying claims, each class member's damages would have to be calculated based upon an individualized actuarial formula. Hence, Humphrey has failed to satisfy Rule 23(b)(3).

> **b.** **Class resolution is not superior to alternative methods for adjudication of the controversy.**

The superiority requirement applies to cases for which "a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615.  Humphrey argues that class resolution is superior because (1) the alternative is 200-300 potential individual claims and (2) the issues in this case are primarily legal rather than factual.

---

[15] Humphrey testified that she did not read or even have someone read to her the plan documents at issue in this case, so she could not have relied on any of them. Ex. A at 116-117. Moreover, no evidence exists that Blackmer ever knew what was in any of the Plan documents, let alone that he relied on them to his detriment. Yet, Humphrey now seeks to represent a class whose members must establish reliance to overcome the scrivener's error defense.

Humphrey's contention that 200-300 individual claims will result if a class is not certified in this case is speculative. Again, Humphrey has no evidence whatsoever to show how many potential claimants have (1) exhausted their administrative remedies, (2) have detrimentally relied on the mistaken "plus" language in Section 6.5 of the 96 Plan, or (3) have taken or definitely will take early retirement. As such, Humphrey does not have even a remotely accurate estimate of how many potential claimants exist, much less how many would actually pursue their claims. It is entirely possible, and in fact extremely likely, that if no class is certified, Humphrey would remain the only plaintiff who seeks legal redress for the mistake in the 96 Plan.

Moreover, Humphrey's assertion that the issues in this case are primarily legal rather than factual is simply wrong with regard to individual potential class members. The determinations regarding reliance, exhaustion of remedies, and damages calculations that will attend this case are all highly factual inquiries that must be undertaken before any class member can recover damages.

As Humphrey cannot satisfy the superiority requirement of 23(b)(3) or any other requirement of 23(a) or (b), her motion to certify a class must fail.

## IV.    CONCLUSION

For the reasons stated herein, the United Way of the Texas Gulf Coast (the "United Way") and the United Way of the Texas Gulf Coast Cash Balance Plan (the "Plan") (collectively, the "Defendants") respectfully request that the Court deny Humphreys' Motion for Class Certification.

Respectfully submitted,

BAKER BOTTS L.L.P.

By: _Maryanne Lyons_

Maryanne Lyons
State Bar No. 00787937
910 Louisiana Street
Houston, Texas  77002-4995
713.229.1632
713.229.2732 (facsimile)

ATTORNEYS FOR UNITED WAY OF
THE TEXAS GULF COAST AND
UNITED WAY OF THE TEXAS GULF
COAST CASH BALANCE PLAN

OF COUNSEL:
Richard R. Brann
State Bar No. 02888000
John E. Neslage
State Bar No. 14923500
BAKER BOTTS L.L.P.
One Shell Plaza
910 Louisiana
Houston, TX  77002
713.229.1632
713.229.2732 (facsimile)