IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ANNA W. HUMPHREY, individually and on }
behalf of all others similarly situated,     }
                                             }
            Plaintiff,                       }
                                             }
VS.                                          }    CIVIL ACTION NO. H-05-758
                                             }
UNITED WAY OF THE TEXAS GULF                 }
COAST, a Texas non-profit corporation, and   }
UNITED WAY OF THE TEXAS GULF                 }
COAST CASH BALANCE PLAN,                     }
                                             }
            Defendants.                      }

## OPINION & ORDER

Pending before the court in this ERISA case is Plaintiff's motion for costs and attorneys' fees and for prejudgment interest (Doc. 126). Defendants have filed a response in opposition (Doc. 138), to which Plaintiff has replied (Docs. 140 and 141).[1] For the reasons explained below, the court ORDERS that Plaintiff's motion is GRANTED-IN-PART and DENIED-IN-PART.

## I.    BACKGROUND

The history of this litigation is long and contentious. Although the court has articulated the facts of this case several times in various opinions,[2] a brief recitation of the factual background is appropriate.

Plaintiff Ann W. Humphrey ("Humphrey"), as a beneficiary of Fredrick Blackmer ("Blackmer"), sought the payment of pension benefits accrued under a plan

---

[1]     Docket entry number 141 is Plaintiff's corrected reply brief.

[2]     (*See, e.g.,* Memorandum Opinion and Order Certifying Humphrey Class, Doc. 87; Order on Class Definition, Doc. 123; Opinion and Order on Summary Judgment, Doc. 125).

1

sponsored by defendant United Way of the Texas Gulf Coast ("United Way").  Until 1996, United Way maintained the plan as a traditional defined benefits plan (the "89 Plan" or "Prior Plan").  Concerned about funding obligations, United Way switched to a cash balance plan (the "96 Plan" or "New Plan").  Both plans gave qualified Participants the option of electing an Early Retirement Pension ("ERP").  This case involved a dispute over how the ERP should be calculated for Participants who had accrued benefits under both the Prior Plan and the 96 Plan.

Section 6.5 of the original version of the 96 Plan provides that Participants electing early retirement may collect an ERP consisting of what they would have been entitled to under the 89 Plan plus what they are entitled to under the 96 Plan.  This language was amended in part in 1997 to provide that an ERP benefit under section 6.5 would be calculated using the "greater of" the benefit under the two Plans.  Nevertheless, the second paragraph of section 6.5 remained unchanged and stated, in pertinent part, "***[n]otwithstanding any provision of the [96 Plan] to the contrary***, any Participant [who meets certain qualifications] shall be entitled to an [ERP] equal to at least the Pension amount derived from . . . [the 89 Plan] plus the pension earned under [the 96 Plan]."  The "plus" language remained in effect until 2002, when the 96 Plan was amended for the last time.  United Way failed to provide notice of these amendments to the beneficiaries.

Blackmer, now deceased, was a Participant in both the Prior Plan and the 96 Plan.  After working for over 25 years, he retired at age 63.  Before retiring, however, he sought a calculation of his pension benefits.  Initially, United Way agreed that the "plus" methodology was correct.  The dispute during the administrative proceeding was whether United Way had calculated the 89 Plan and 96 Plan pensions accurately.  It

2

evolved into the current lawsuit when United Way took the position, after Blackmer had exhausted his administrative remedies, that the "greater of" methodology was actually the correct calculation and that the "plus" language in the 96 Plan was a mistake. United Way admitted that it used the "greater of" methodology when calculating Blackmer's pension benefits. Indeed, United Way admitted that, since the inception of the 96 Plan, it has always used the "greater of" methodology when calculating ERP benefits under the 96 Plan. Humphrey brought suit against United Way and the 96 Plan (collectively "Defendants") seeking to enforce the "plus" methodology of the 96 Plan on behalf of herself and for all plan participants similarly situated.

The parties filed, among other things, extensive cross motions for summary judgment. Additionally, Humphrey moved to certify a class of similarly situated Participants in the 96 Plan. The court certified a class composed of the following individuals:

> All Participants or Former Participants (as those terms are defined in the Plan), and beneficiaries of such Participants or Former Participants, who (1) as of 12/31/95, had accrued a pension under the Prior Plan (as defined in the Plan), (2) were or hereafter are eligible for an Early Retirement Pension under the Plan ("ERP"), and (3) either received an ERP or are eligible to receive an ERP or hereafter become eligible to receive an ERP.

The court subsequently clarified that the class included Participants who have received an ERP, Participants who have received a deferred vested ERP, and active or former Participants who are currently eligible or may become eligible to elect an ERP. Excluded from the class were active or former Participants who accrued benefits under the two Plans but who are no longer eligible to elect an ERP and Participants who have received either a Normal Retirement Pension or a Late Retirement Pension.

3

Prior to the court's order clarifying the class composition, Defendants requested the substitution of counsel,[3] who, in turn, requested that the case be stayed pending mediation. The court granted a brief stay, but mediation efforts proved unsuccessful. After the stay lifted, Defendants' new counsel submitted supplemental briefing on the pending motions for summary judgment.

March 28, 2008, the court issued its opinion and order granting Plaintiff's motion for summary judgment and denying Defendants' motion for summary judgment. (Doc. 125). Among other things, the court found that the plan had abused its discretion in interpreting the 96 Plan in a manner clearly contradictory to the plain meaning of the plan language. The court further rejected Defendants' primary contention that the "plus" provision could be rescinded because of a drafting error. Finally, the court rejected Defendants' supplemental arguments regarding the interpretation of section 6.5, finding the arguments to be "disingenuous" in light of prior arguments on the matter. The court declared that the "plus" language of section 6.5 was the appropriate method of calculating the class members' ERP benefits and ordered the Defendants to pay the class members the difference between the "plus" ERP and the "greater of" ERP, plus prejudgment interest at a rate to be determined upon further briefing by the parties. The court also stated that nothing in the order precluded Plaintiff from moving for costs and reasonable attorneys' fees pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g).

Humphrey, represented by the Michigan-based law firm Hertz Schram P.C., filed the pending request for costs, attorneys' fees, and prejudgment interest pursuant to the order on summary judgment. Humphrey seeks to recover attorneys' fees

---

[3]  Baker Botts L.L.P. acted as counsel from the inception of the case until the request for substitution. Fulbright and Jaworski L.L.P. has acted as counsel from October 2007 to the present.

for the services of: Eva Cantarella ("Cantarella"), partner and lead counsel on this case; Robert Geller ("Geller"), partner; Bradley Schram ("Schram"), partner; Derek McLeod ("McLeod"), associate; Lori Howes ("Howes"), paralegal; and Shelly Rayment ("Rayment"), paralegal. Humphrey requests that the court compensate these individuals as follows: (1) $700 per hour for 2278.55 hours for Cantarella; (2) $700 per hour for 322.30 hours for Schram; (3) $700 per hour for 296.00 hours for Geller; (4) $350 per hour for 61.95 hours for McLeod; (5) $200 per hour for 46.75 hours for Howes; and (6) $200 per hour for 40.30 hours for Rayment. Accordingly, Plaintiff's total "unenhanced" lodestar request is $2,066,877.50. Humphrey further requests a 1.75 multiplier for a total fee award of $3,617,053.13. Additionally, Humphrey requests costs in the amount of $55,677.11 for the reasonable expenses incurred by counsel investigating, evaluating, preparing, and litigating the claims. Finally, Humphrey requests that the court award prejudgment interest to each class member based on a rate, compounded annually and prorated to the date of the final judgment, equal to the greater of the average rate of return on the 96 Plan's earnings over the entire prejudgment period or the Texas prejudgment interest rate "based (a) initially on the prime rate published by the Federal Reserve Board of Governors in effect on the date the ERP was paid, but only for the period such prime rate was in effect during the [c]lass member's prejudgment period, and (b) thereafter, on each new prime rate published by the Federal Reserve Board, but . . . only for the period such new prime rate was in effect during the [c]lass member's prejudgment period . . ." (Pl.'s Mot. at 44, Doc. 126).

    Defendants object on a number of grounds, but the crux of their argument is that the fee request is "grossly exorbitant" given that (1) the hourly rates claimed by

5

Plaintiff's counsel greatly exceed the prevailing market rates for ERISA litigation attorneys practicing in the Southern District of Texas and (2) the number of hours was excessive, especially since so many of them were logged by highly compensated partners. The Defendants further claim that a multiplier is not appropriate in this case and that the prejudgment interest calculation is contrary to controlling authority and will result in individualized inquiries for each class member.

## II.   LEGAL STANDARD

ERISA provides that "[i]n any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."  29 U.S.C. § 1132(g)(1).  The court must apply five factors to determine whether attorneys' fees and costs are warranted under the particular facts of the case: (1) the degree of the opposing party's culpability or bad faith; (2) the ability of the opposing party to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing party would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions. *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980); *see also Bannistor v. Ullman*, 287 F.3d 394, 408-09 (5th Cir. 2002).  "'No one of these factors is necessarily decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a Court should address in applying [the

relevant attorneys' fees and costs provision of ERISA].'" *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 821 (5th Cir. 1997) (quoting *Bowen*, 624 F.2d at 1266).

In the Fifth Circuit, determining reasonable attorneys' fees involves a two-step process. *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 323-24 (5th Cir. 1995) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "Initially, the district court must determine the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating lawyers." *Id.* at 324 (citing *Hensley*, 461 U.S. at 433). "Then the district court must multiply the reasonable hours by the reasonable hourly rates." *Id.* (citations omitted). "The product of this multiplication is the lodestar, which the district court then either accepts or adjusts upward or downward, depending on the circumstances of the case." *Id.* (citing *Brantley v. Surles*, 804 F.2d 321, 325 (5th Cir. 1986).

The court can adjust the lodestar by applying the twelve factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1994). The *Johnson* factors are as follows:

> (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Migis v. Pearle Vision*, 135 F.3d 1041, 1047 (5th Cir. 1998) (citing *id.* at 717-19). Based on one or more of the *Johnson* factors, the court may apply a multiplier to adjust the

7

lodestar up or down if that factor or factors are not already taken into account by the lodestar itself. *Strong v. BellSouth Telcoms.*, 137 F.3d 844, 850 (5th Cir. 1998).

## III.   ANALYSIS

### A.   Application of the *Bowen* Factors

Defendants acknowledge that as the prevailing party, Plaintiff "probably is entitled to some attorney's fees." (Defs.' Resp. at 3, Doc. 138). It disputes, however, several of Plaintiff's statements with respect to the application of the *Bowen* factors to the facts of this case. The court finds that the *Bowen* factors support an award of attorneys' fees in this case.

The culpability factor weighs in favor of awarding attorneys' fees. The court has found that the Defendants abused their discretion in calculating the class members' ERP benefits in a manner directly in conflict with the plain language of the 96 Plan. The Defendants have exacerbated the situation and greatly expanded the number of Participants affected by their incorrect calculations by refusing to send notice of the various amendments made in order to correct the "plus" language in section 6.5. The Defendants are primarily responsible for these miscalculations notwithstanding any lack of bad faith.[4] As such, this factor weighs in favor of awarding attorneys' fees.

---

[4]   The parties vigorously dispute whether the Defendants acted in bad faith. Given the court's finding of culpability, a definitive determination regarding bad faith is not necessary. *See Bannistor*, 287 F.3d at 409 ("In light of our conclusion affirming [the appellants'] liability, the first factor weighs in favor of the award notwithstanding any lack of bad faith because their actions were primarily responsible for Appellees' losses."). Nevertheless, the court notes that Defendants have not acted entirely in good faith. In particular, they were less than forthright with Blackmer during the adjudication of his claim. Moreover, the Defendants' decision to amend the 96 Plan several times without notice to the plan beneficiaries is also evidence of bad faith in the context of this case.

The second *Bowen* factor also weighs in favor of awarding attorneys' fees. As noted in the court's opinion and order on summary judgment, the plan is sufficiently funded to satisfy an award in this case.

The deterrence factor is also relevant. Although the Defendants question the deterrent effect of an attorneys' fees award in a case where they were found liable "because of the inclusion of one paragraph in a lengthy cash balance plan document" that most of the drafters opined was a mistake,[5] the court finds that such an award would deter plan sponsors and administrators from denying benefits in direct contradiction to the plain language of the plan. The award would also act as a deterrent with respect to plan sponsors and administrators unilaterally amending a plan to reduce benefits without providing notice to the plan beneficiaries. While the factual backdrop of this case may be unique, the award of attorneys' fees will have a deterrent effect on similar actions of other plan sponsors and administrators reviewing ERISA benefit determinations. Thus, this factor weighs in favor of an attorneys' fees award.

The fourth *Bowen* factor is not relevant here because Humphrey sought to benefit a particular class of plan participants, rather than all of the participants, and novel issues regarding ERISA were not involved.

Finally, the fifth *Bowen* factor, the *relative* merits of the parties' positions, strongly weighs in favor of awarding attorneys' fees. Humphrey prevailed on all of the critical issues before the court. She obtained a hard-fought class certification and ultimately achieved summary judgment for her claims. The issues upon which the Defendants have prevailed have been relatively minor in comparison to these victories.

---

[5] (Defs.' Resp. at 6, Doc. 138).

Having considered the application of the *Bowen* factors, the court finds that a reasonable award of attorneys' fees is appropriate in this case.

B.  Calculation of the Lodestar

In calculating the lodestar figure, the Plaintiff has the burden of demonstrating that the hourly rates and the time expended are reasonable. *Hensley*, 461 U.S. at 427.

1.  Reasonable Hourly Rates

The reasonable hourly rate is determined by looking at the rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895-96 n.11 (1984). The relevant legal community is the one in which the district court sits, no matter how much of the work is done elsewhere. *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 662 (5th Cir. 2002), *abrogated on other grounds*, *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). The reasonable hourly rate for a particular community is generally established through affidavits of other attorneys practicing in that community. *See Watkins v. Fordice*, 7 F.3d 453, 458 (5th Cir. 1993); *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). Additionally, the court must consider the attorneys' regular rates in assessing the reasonableness of the hourly rate claimed. *Kellstrom*, 50 F.3d at 328.

The court finds that Humphrey has not met her burden in demonstrating that the hourly rates claimed are reasonable. Plaintiff has not submitted any affidavits from local attorneys to show that the $700, $350, and $200 hourly rates are reasonable for similarly-experienced partners, associates, and paralegals, respectively, working in

10

the Southern District of Texas. Moreover, the charts and cases upon which Plaintiff relies show hourly rates much lower than the ones Plaintiff seeks to recover here. By contrast, the Defendants offer the affidavit of their current attorney-in-charge, Reagan M. Brown ("Brown"), who avers that (1) the prevailing 2008 rate for partners experienced in ERISA litigation in the Southern District of Texas ranges from $300 to $640 per hour; (2) the prevailing 2008 rate for associates experienced in ERISA litigation in the Southern District of Texas ranges from $150 to $300 per hour; and (3) the prevailing 2008 rate for legal assistants who work on ERISA litigation matters in the Southern District of Texas ranges from $80 to $150 per hour. (Brown Aff. at 3, Doc. 138 Ex. 2).[6] Having carefully considered all the evidence presented by the parties, as well as considering the court's own familiarity with the reasonable hourly rates awarded for similarly-experienced attorneys litigating in the Southern District of Texas, the court finds that the following hourly rates are reasonable in this case: $400 per hour for Cantarella, Schram, and Geller; $200 per hour for McLeod; and $100 per hour for Howes and Rayment.

    2.    Number of Hours Reasonably Expended

To determine the number of hours reasonably expended, the party seeking fees must demonstrate that billing judgment was exercised. *Walker v. HUD*, 99 F.3d 761, 769 (5th Cir. 1996). "Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant. The proper remedy for omitting evidence of billing judgment does not include a denial of fees but, rather, a reduction of the award by a percentage intended to substitute for the exercise of billing

---

[6] Brown, a partner at Fulbright & Jaworski L.L.P. in Houston, Texas, has been litigating ERISA matters since 1986, including the litigation of ERISA class action cases. (Brown Aff. at 1-2, Doc. 138 Ex. 2).

11

judgment." *Saizan v. Delta Concrete Products Comp.*, 448 F.3d 795, 799 (5th Cir. 2006) (internal footnotes and citations omitted).

The court finds that Plaintiff has not met her burden in demonstrating that billing judgment has been exercised. Plaintiff has not demonstrated that any of the time reflected in her invoices has been written off as unproductive, excessive, or redundant.[7] More importantly, however, is the fact that the vast majority of the hours claimed are for work performed by three partners. The court finds that nearly 3,000 hours of partner time is excessive under the facts of this case. As such, the court will reduce the number of hours worked by Cantarella, Schram, Geller, McLeod, Howes, and Rayment by thirty percent (30%). Adjusted by thirty percent, the number of hours to be compensated is as follows: (1) 1,594.99 hours for Cantarella; (2) 225.61 for Schram; (3) 207.20 for Geller; (4) 43.37 for Howes; and (5) 28.21 for Rayment.

3.  Recalculated Lodestar

Adjusted according to the analysis above, the appropriate and reasonable lodestar in this case is $825,888:

| | | |
|---|---|---|
| Cantarella | $637,996 | [$400/hour x 1594.99 hours] |
| Schram | $90,244 | [$400/hour x 225.61 hours] |
| Geller | $82,880 | [$400/hour x 207.20 hours] |
| McLeod | $8,674 | [$200/hour x 43.37 hours] |
| Howes | $3,273 | [$100/hour x 32.73 hours] |
| Rayment | $2,821 | [$100/hour x 28.81 hours] |
| **Total:** | **$825,888** | |

---

[7] (*See* Summary of Attorney and Paralegal Time and Expenses, Doc. 126 Ex. 83).

12

C.   Adjustment of the Lodestar

There is a strong presumption that the lodestar is a reasonable fee, and the fee applicant bears the burden of demonstrating that an adjustment by application of the *Johnson* factors is necessary to calculate a reasonable fee. *Walker*, 99 F.3d at 771. Here, Humphrey urges the court to enhance the lodestar based on the following *Johnson* factors: the novelty and difficulty of the questions presented (factor 2); the skill required to perform the legal services properly (factor 3); the preclusion of other employment by the attorney due to acceptance of the case (factor 4); the experience, reputation and ability of the attorneys (factor 9); the 'undesirability' of the case (factor 10); the nature and length of the professional relationship with the client (factor 11); and awards in similar cases (factor 12).[8] The court finds that none of these factors, individually or collectively, necessitate an enhancement of the lodestar.

The second, third, fourth, and ninth *Johnson* factors do not warrant enhancement of the lodestar in this case. The second, third, and ninth factors are generally encompassed in the lodestar itself, and, as such, enhancements made on the basis of these factors is appropriate only in "rare cases supported by specific evidence in the record and detailed findings by the courts" *See Walker*, 99 F.3d at 771 (citing *Alberti v. Klevenhagen*, 896 F.2d 927, 936 (5th Cir.), *modified on other grounds*, 903 F.2d 352 (5th Cir. 1990)); *see also Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) ("'Novelty [and] complexity of the issues,' 'the special skill and experience of counsel,' the 'quality of representation,' and the 'results obtained'

---

[8]   Although Plaintiff does not seek enhancement based on the sixth *Johnson* factor, the court notes that the Supreme Court has held that the enhancement of the lodestar by a multiplier based on the contingent nature of a fee is not permitted when fees are awarded to plaintiff's counsel under fee-shifting provisions of statutes. *City of Burlington v. Dague*, 505 U.S. 557, 567 (1992).

from the litigation are presumably fully reflected in the lodestar amount, and thus cannot serve as independent bases for increasing the basic fee award.") (quoting *Blum*, 465 U.S. at 898-900). Additionally, the Fifth Circuit has held that the fourth factor, preclusion of other employment, is also generally subsumed in the lodestar. *Shipes v. Trinity Indus.*, 987 F.2d 311, 322 (5th Cir. 1993). This case is not "rare" or "exceptional." In *Shipes*, the Fifth Circuit reviewed the district court's enhancement of the lodestar based on the novelty and difficulty of a complex and highly technical case in which there were over three hundred plaintiffs, an entire spectrum of employment decisions being challenged, and the additional difficulties caused by the defendants' obstinate conduct. There, the Fifth Circuit determined,

> These factors--not uncommon in much present-day litigation--simply do not render a case "rare" or "exceptional" for purposes of enhancing the lodestar amount. All counsel competent to handle a case such as this one are expected to be able to deal with complex and technical matters; this expertise is reflected in their regular hourly rate, based on fees for counsel of similar experience and ability. Still further, the difficulty in the handling of the case is adequately reflected in the number of hours billed-- hours for which the attorney is compensated in the lodestar amount. Similarly, obstinate conduct by opposite counsel is compensated by the additional number of hours that are required to prevail over such obstinacy.

*Id.* at 321. The court finds that the lodestar amount, especially with respect to the hours charged, reflect the novelty and complexity of the case, the skill required to perform the legal services, Cantarella's assertion that she refused lucrative work on certain property tax appeals, and the experience and reputation of Plaintiff's counsel.

Nor do the tenth, eleventh, or twelfth *Johnson* factors support an enhancement of the lodestar. With respect to the tenth factor, the court does not find anything to suggest that this case was abnormally undesirable, especially considering the

14

Defendants' admission that a "mistake" had been made. As to the eleventh factor, Plaintiff argues that she is unlikely to be a source of additional revenue given the contingent nature of the case and the fact that Plaintiff's counsel is in Michigan and Plaintiff is in Texas. Be that as it may, the court does not find this factor to be a particularly compelling reason to enhance the lodestar in this case. Finally, the court is not persuaded by the "similar" cases upon which Plaintiff relies to enhance the lodestar by a 1.75 multiplier. Even reduced, the lodestar in this case is more than adequate to compensate Plaintiff's attorneys for their successful litigation of this action.

Accordingly, the court shall award Plaintiff her attorneys' fees in the amount of $825,888.00.

D. Costs

In judging whether to award costs under the fee-shifting statute of ERISA, the court should use a "prevailing party" test analogous to the standard set forth in Fed. R. Civ. P. 54(d). *See Wade v. Hewlett-Packard Dev. Co. LP Short Term Disab. Plan*, 493 F.3d 533, 542-43 (5th Cir. 2007). It is undisputed that Plaintiff is the prevailing party in this case. As such, she may recover "[a]ll reasonable out-of-pocket expenses, including charges for photocopying, paralegal assistance, travel, and telephone . . . because they are part of the costs normally charged to a fee-paying client." *Assoc. Builders & Contractors, Inc. v. Orleans Parish Sch. Bd.*, 919 F.2d 374, 380 (5th Cir. 1990) (costs assessed under 42 U.S.C. § 1988). The Defendants have not objected to the $55,677.11 in costs claimed by Humphrey. The court has independently reviewed the costs asserted and finds them to be reasonable and necessary to the successful litigation of this matter. Accordingly, the court will award $55,677.11 in costs to the Plaintiff.

F.     Prejudgment Interest

Texas law provides an appropriate source of guidance for district courts setting the prejudgment interest rate in an ERISA case.  *See Hansen v. Continental Ins. Co.*, 940 F.2d 971, 984 (5th Cir. 1991).  In *Johnson & Higgins of Tex. Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507 (Tex. 1998), the Texas Supreme Court held that common law prejudgment interest should resemble the statutory scheme for determining prejudgment interest.  *Id.* at 530-31.  Under the Texas Finance Code, the prejudgment interest rate is the same as the post-judgment interest rate.  *See* Tex. Fin. Code Ann. § 304.103 (Vernon 2006).  Moreover, under the statutory scheme, prejudgment interest is computed as simple interest and accrues on the earlier of (1) 180 days after the date the defendant receives written notice of a claim or (2) the date the suit is filed.  *Id.* § 304.104.  The most applicable postjudgment interest rate in this case is the rate specified in Texas Finance Code § 304.003(c), which is currently set at five percent (5%).

The court declines to depart from Texas law on the issue of prejudgment interest.  Plaintiff's "equitable" model introduces individualized inquiries that are at odds with the class certification request.  As such, the court will award prejudgment interest according to the rules set forth under the Texas Finance Code.  In doing so, the court expressly finds as follows: (1) Humphrey is entitled to prejudgment interest on Blackmer's individual claim at a rate of 5% simple interest beginning 180 days after United Way received notice of his claim to calculate his benefits under the "plus" methodology; (2) class members who have received an ERP are entitled to prejudgment interest at a rate of 5% simple interest beginning on March 9, 2005 (the date this suit was filed) through the date of final judgment; and (3) class members who have yet to elect an

16

ERP are not entitled to any prejudgment interest because such interest would be one based on future damages, which is expressly prohibited under Tex. Fin. Code § 304.1045. Moreover, prejudgment interest will only accrue as to actual damages awarded and not on the attorneys' fees awarded. *See Cushman & Wakefield, Inc. v. Fletcher*, 915 S.W.2d 538, 547 (Tex. App.—Dallas 1995, writ denied) (holding prejudgment interest is not recoverable on attorney's fees awarded).

IV.     Conclusion

Accordingly, it is hereby

ORDERED that Plaintiff's motion for attorneys' fees, costs, and prejudgment interest (Doc. 126) is GRANTED-IN-PART and DENIED-IN-PART. Plaintiff is awarded the following:

| | |
|---|---|
| Attorneys' fees: | $825,888.00 |
| Costs: | $57,677.11 |
| Prejudgment interest: | 5% |

It is further

ORDERED that the Plaintiff submit within TEN (10) DAYS of entry of this order a proposed final judgment that includes the final damage calculation for the class.

SIGNED at Houston, Texas, this 20th day of November, 2008.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE