IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANN W. HUMPHREY, individually and on behalf of others similarly situated, | § § § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION H-05-758 |
| | § | |
| UNITED WAY OF THE TEXAS GULF COAST, a Texas non-profit corporation, and UNITED WAY OF THE TEXAS GULF COAST CASH BALANCE PLAN, | § § § § § | |
| | § | |
| Defendants. | § | |

**OPINION AND ORDER**

Pending before the Court in the above referenced class action alleging unlawful reduction of pension benefits, grounded in the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461, are (1) Defendants United Way of the Texas Gulf Coast and United Way of the Texas Gulf Coast Cash Balance Plan's (collectively, "United Way's") Rule 59 motion to alter or amend the judgment, or alternatively motion for reconsideration, or alternatively motion for new trial (instrument #180) and (2) Plaintiff/Class Representative Ann W. Humphrey's ("Plaintiff's" or "Humphrey's") Rule 54 motion (#179) for common-fund costs and fees and additional costs and attorneys' fees owed to Plaintiffs under ERISA § 502(g), 29 U.S.C. § 1132(g).

-1-

## United Way's Rule 59 Motion

The Court entered final summary judgment in favor of Plaintiffs on December 9, 2010 (#171), triggering the fourteen-day period for filing a motion for costs and attorneys' fees under Federal Rule of Civil Procedure 54(d).[1]

A Rule 59(e) motion "calls into question the correctness of a judgment." *Templet v. Hydrochem, Inc.*, 367 F.3d 473, 478-79 (5th Cir. 2004). "A motion to alter or amend the judgment under Rule 59(e) 'must clearly establish either a manifest error of law or fact or must present newly discovered evidence' and 'cannot be used to raise arguments which could, and should, have been made before the judgment issued.'" *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863-64 (5th Cir. 2003)(*quoting Simon v. United States*, 891 F.3d 1154, 1159 (5th Cir. 2003)). It also cannot be used to re-litigate issues "that simply have been resolved to the movant's dissatisfaction." *In re Self*, 172 F. Supp. 2d 813, 816 (W.D. La. 2001). Altering, amending or reconsidering a judgment is an extraordinary measure that should rarely be granted and only when there is (1) an intervening or change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or fact or to prevent a manifest injustice. *Schiller v. Physicians Resource Group, Inc.*, 342 F.3d 563, 567 (5th Cir. 2003). A court has considerable

---

[1] Plaintiff's instant motion was filed on January 3, 2011.

discretion in determining whether to reopen a case in response to a motion for reconsideration under Rule 59(e). *Lavespere v. Niagra Mach. & Tool Works, Inc.*, 910 F.2d 167, 174 (5th Cir. 1990), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 N.14 (5th Cir. 1994)(*en banc*).  In such a circumstance the court "must strike the proper balance between two competing imperatives:  (1) finality, and (2) the need to render just decisions on te basis of all the facts." *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993).  "Courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking new trial." *Sibley v. Lemaire*, 184 F.3d 481, 487 (5th Cir. 1999), *cert. denied*, 529 U.S. 1019 (2000).

Arguing that manifest errors of fact or law exist in the orders and opinions that form the basis of the final judgment so that "it is reasonably clear that prejudicial error has crept into the record [and] that substantial justice has not been done,"[2] Defendants object to numerous rulings made in the course of this long litigation, specifically pointing to the August 14, 2007 order certifying a class (#87); the February 19, 2008 order clarifying composition of the class (#123); the March 28, 2008 Opinion and Order granting Plaintiff's Motion for Summary Judgment and denying

---

[2] *Sibley*, 184 F.3d at 487.

United Way's Motion for summary Judgment (#125); the November 15, 2010 Opinion and Order overruling United Way's Objections to Humphrey's Proposed Final Judgment and Second Amended Proposed Final Judgment (#169); and the December 9, 2010 Final Judgment (#171).

This Court has expended extensive time and effort in addressing the issues as they were initially presented and as they have evolved over the pendency of this action. After yet another careful review, it stands by its earlier orders. Moreover the Court finds that once again Plaintiff has persuasively responded to the many rehashed and few new arguments, both legal and factual, raised in Defendants' Rule 59 motion. The Court fully concurs with Plaintiff and denies Defendants' Rule 59 motion.

**Humphrey's Rule 54 Request for Common Fund Fees and Costs (#179)**

With supporting affidavits, records, and documentation, Plaintiff seeks to recover (1) common-fund costs and fees and (2) an additional award of costs and fees incurred since April 22, 2008 under ERISA § 502(g), in other words since the Court's previous November 20, 2008 award (#148, clarified #169 at 12-13).[3] Humphrey

---

[3] On November 20, 2008 the Court awarded attorneys' fees by the lodestar method in the amount of $825,888.00 and costs in the amount of $57,6777.11 under ERISA § 502(g) for the period after administrative proceedings (April 25, 2003) through April 22, 2008. In doing so, the Court reduced Humphrey's requested lodestar hours by 30%.

observes that ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1),[4] allows an award of fees solely to a "party," and therefore the attorneys did not receive the costs and fees from the court's award.  Thus they now seek to recover fees and costs under the "common fund" doctrine for the entire period of this litigation and an additional award of costs and fees to Plaintiff under ERISA § 502(g)(1) just for the period since April 22, 2008.

After noting a wide variety of approaches by different courts,[5] Humphrey urges the Court, as a "cautious and reasonable approach for determining the common fund fees in this case," to (i) determine a reasonable benchmark percentage; (ii) adjust that percentage by applicable *Johnson* factors[6]; and (iii) cross-check

---

[4] Section 502(g)(1), 29 U.S.C. §1132, states that in actions involving delinquent contributions, "[i]n any action under this subchapter (other than an action described in paragraph (2)), by a participant, beneficiary, or fiduciary, the court may allow a reasonable attorney's fee and costs of action to either party."

[5] This Court is fully familiar with different approaches and refers the parties to its discussion in *In re Enron Corp. Sec., Derivative & "ERISA" Litigation*, 586 F. Supp. 2d 732 (S.D. Tex. 2008).

[6] *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).  The twelve *Johnson* factors are (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service adequately; (4) the preclusion of other employment by the attorney because he accepted this case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *Johnson*, 488 F.2d at

-5-

the percentage result by calculating the lodestar enhanced by any
applicable multiplier.[7]  Relying on Theodore Eisenberg and Geoffrey
P. Miller's paper, *Attorneys Fees in Class Action Settlements:  An*

---

717-19.

[7] To determine a reasonable attorney's fee by the lodestar
method, the court must multiply the number of hours reasonably
expended on legal services by an appropriate hourly rate in the
community for the same kind of work and then decrease or enhance
the lodestar based on the *Johnson* factors unless the calculation of
the lodestar has already taken that factor into account.  *Shipes v.
Trinity Industries*, 987 F.3d 311, 319-20 (5th Cir. 1993).  The
Supreme Court has since concluded regarding the sixth factor that
"enhancement for contingency is not permitted under the fee-
shifting statutes." *City of Burlington v. Dague*, 505 U.S. 557, 567
(1992).  It has also restricted use of the second, third, eighth,
and ninth factors because "[e]nhancements based upon these factors
are only appropriate in rare cases supported by specific evidence
in the record and detailed findings by the courts." *Pennsylvania
v. Delaware Valley* Citizens' Council for Clean Air, 478 U.S. 546,
565 (1986)("'[N]ovelty [and] complexity of the issues,' 'the
special skill and experience of counsel,' the 'quality of
representation,' and the 'results obtained' from the litigation are
presumably fully reflected in the lodestar amount, and thus cannot
serve as independent bases for increasing the basic fee award.'"),
*citing Blum v. Stenson*, 465 U.S. 886, 898-900 (1984).  The Fifth
Circuit has held that the fourth factor, preclusion of other
employment, is also generally subsumed in the lodestar.  *Shipes*, 97
F.3d at 322.  There is a strong presumption that the lodestar award
is reasonable, and a fee applicant bears the burden of producing
satisfactory evidence (declarations or opinion evidence of rates
actually billed and paid by plaintiff's counsel, rates charged by
lawyers in similar lawsuits, and relative skill of the attorney in
the case) that the requested rate is reasonable or that an
enhancement is necessary.  *Blum*, 465 U.S. at 896 n.11; *City of
Burlington v. Dague*, 505 U.S. 557, 562 (1992).  The Court may deny
fees for "excessive, redundant or otherwise unnecessary" hours that
lack appropriate documentation.  *Hensley v. Eckerhart*, 461 U.S.
424, 434 (1983).
   A reasonable hourly rate for an attorney is the prevailing
market rate in the district where the court sits for attorneys of
comparable experience employed in cases of similar complexity.
*Blum*, 465 U.S. at 895-96 & n.11.

*Empirical Study*, 1 Journal of Empirical Legal Studies 27-78 (2004)(copy attached, #179-5), Humphrey suggests, as a reasonable benchmark in this class action, 29.8% of the benefit to the class before application of the *Johnson* factors.  Although conceding that in Plaintiff's previous statutory fee award under ERISA § 502(g) the Court reduced her requested hours by 30%, she asks the Court for purposes of a common fee award to consider all the hours requested (the time the attorneys and paralegals actually spent on this case).  She also submits a request for additional hours that the attorneys (778.35 hours) and paralegals (41 hours) have spent since April 23, 2008 through January 2, 2011.  #179 at 36.

She then urges that the 29.8% benchmark should be upwardly adjusted for the following *Johnson* factors: (1) the time and labor required; (2) the complexity and difficulty of interrelated issues; (3) the unique skills required to litigate an ERISA class action; (4) the preclusion of other employment; (5) the firm's customary 33 and 1/3% contingent fee; (6) the risk of nonpayment in common fund cases; (7) the experience, reputation, and ability of the attorneys; (8) the undesirability of the case; and (9) awards made in similar cases, with specific examples listed.  Humphrey therefore seeks an upward adjustment to 33 and 1/3%, the percentage fee which courts have typically awarded in other class actions for pension benefits under a defined benefit plan.

For the lodestar cross-check, Plaintiff states that she cannot

obtain supporting affidavits from Houston ERISA attorneys of comparable skill, experience and reputation in the Houston community because no hourly rates exist since class actions are nearly always prosecuted on a contingent fee basis. Instead she cites to cases in which hourly rates were awarded in the past two years to attorneys who handled employment, benefits, or complex cases in the Southern District of Texas and presents a chart of their awards. She concludes that a reasonable hourly rate for her law firm's[8] partners would be $425, for associates, $225, and for paralegals, $125, a slight increase over what the Court found in its award over two years ago that recognizes "current" rates.

As for the number of hours, given the Court's reductions in the previous fee award, for the period from April 23, 2008 to January 2, 2011 Plaintiff maintains that for purposes of the cross-check the firm has written off hours[9] for unproductive, excessive, or redundant services.[10] (Handwritten "WO" (writeoff) notations on

---

[8] The firm involved is Hertz Schram, PC, located in Bloomfield Hills, Michigan.

[9] 16.0 hours for Cantarella (attorney in charge, partner), 19.30 hours for Schram (founding partner), 39.60 hours for Geller (senior partner), and 4.50 hours for Howes (paralegal). She states that while the firm deemed these hours necessary, they "generally arose from more than one attorney performing similar or related tasks," so the Court might fund them duplicative. They also wrote off hours spent by Cantarella and Geller on the date their motion was filed, January 3, 2011.

[10] Thus for purposes of her common-fund fee request after writeoffs for the period from April 23, 2008 she lists the following (#179 at 40) as reasonable hours:

Time records for 4/23/09-2/02/11 (PX102)).  Specifically they wrote
off sixteen hours for Cantarella, 19.30 hours for Schram, 39.60
hours for Geller, and 4.50 hours for Howes.  *Id.*

After writeoffs, summarizes Humphrey, the total reasonable
hours for both the pre-4/23/08 period **and** the post-4/23/08 period
are as follows (#179 at 41):

```
Cantarella          2,130.34 hours
Schram                266.81 hours
Geller                323.30 hours
McLeod                 54.17 hours
Howes                  69.23 hours
Rayment                28.81 hours
```

Humphrey maintains that the law firm's significant use of partners
is justified because it is more efficient to have an experienced
ERISA partner handle most aspects of an ERISA claim for pension
benefits than to delegate the work to an inexperienced associate,
who would take longer, not do it as well, and require supervision.
Multiplying these hours by the reasonable hourly fee for each
person who worked on the case as identified *supra*, Plaintiff comes
up with the following lodestar for the entire litigation (#179 at
42):

```
Cantarella          $ 905,394.50
Schram              $ 113,394.25
Geller              $ 137,402.50
McLeod              $  12,188.25
```

```
Cantarella          535.35 hours
Shram                41.20 hours
Geller              116.10 hours
McLeod               10.80 hours
Howes                36.50 hours
```

| | |
|---|---|
| Howes | $ 8,653.75 |
| Rayment | $ 3,601.25 |
| **TOTAL** | **$1,180,634.50** |

Claiming as appropriate a multiplier of 2.0 after consideration of the *Johnson* factors, which she discusses, she arrives at a total figure of $2,343,961.50 for an upwardly adjusted benchmark percentage lodestar cross-check. #179 at 47.

Plaintiff asserts that a reasonable common fund fee percentage of 33 and 1/3% should apply here: one third of $8,469,454.15, the total benefit to the Class as of November 30, 2010, would be $2,823.151.38. That amount is only 20% greater than the amount produced using the lodestar cross-check above. Therefore Humphrey requests a fee award of 33 and 1/3% of the total benefit conferred upon the Class Members.[11]

Plaintiff also argues that the Fifth Circuit has determined that the district court may award attorneys' fees upon a finding on a non-*Bowen* factor, *i.e.*, that defendants abused their discretion. *Lain v. UNUM Life Ins. Co. of America*, 279 F.3d 337, 348 (5th Cir. 2002), *abrogated on other grounds, Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 117-18 (2008); *Vega v. Nation Life Ins. Servs. Inc.*, 188 F.3d 287, 302 (5th Cir. 1999).

Humphrey further claims class counsel's entitlement to an award of costs, which she lists by category, as totaling $55,677.11

---

[11] This sum includes the ERISA § 502(g) costs and fees awarded earlier.

for the period through April 22, 2008, and $26,596.83 from April 23, 2008 through December 31, 2010. #179 at 50-51. Thus counsel's total costs for prosecuting this litigation through December 31, 2010 amount to $82,273.94, which should be awarded out of the common fund.

Finally Humphrey also seeks a case contribution or "incentive" award for her efforts on behalf of the class in the amount of $10,000.

In addition, under ERISA § 502(g), *Bowen*, and *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980), Humphrey contends that the class is also entitled to additional costs and fees incurred after April 22, 2008, i.e., the time after the previous award. In the Fifth Circuit, the lodestar method is used to determine an award under ERISA § 502(g). *Lain,* 279 F.3d at 348. This Court, in granting summary judgment for Humphrey, previously determined that Defendants abused their discretion. As indicated above, she requests an award based on the total lodestar of $301,368.75. She seeks no enhancement relating to her request under ERISA § 502(g) for costs and fees incurred after April 22, 2008. She presents documentation for costs after that date in the amount of $26,596.83, most of which represents actuarial fees in verifying damages of each class subgroup.

In sum, under the common fund doctrine Plaintiff seeks from the net benefit to the Class (including the costs and fees

previously awarded to the Class under ERISA § 502(g)), 33 and 1/3% of that net benefit to Humphrey's attorneys and an incentive fee of $10,000 to Humphrey for her contributions to the case.  She further requests a supplementary statutory award under ERISA § 502(g) for the period since April 22, 2008 of $82,273.94 for costs and $301,368.77 for attorneys' fees.

In her Reply (#185), leaving aside a lot of posturing and bravado rhetoric, Humphrey argues that Defendants have no interest in how the common fund might be apportioned between class members and class counsel and therefore lack standing to object to her request for common fund fees.  *Boeing Co. v. Van Gemert*, 44 U.S. 472, 482 n.7 (1980)("The judgment stripped Boeing of any present interest in the fund.  Thus, Boeing had no cognizable interest in further litigation between the class and its lawyers over the amount of the fees ultimately awarded from money belonging to the class.").

Humphrey further contends that the Court's prior statutory fee award to the class does not control the common fund fee due to class counsel.  She is not seeking an enhancement of § 502(g) attorney's fees award under the fee-shifting statute for the period after the Court's ruling, and in calculating the lodestar cross-check she has excluded those *Johnson* factors excluded by the Supreme Court and the Fifth Circuit.  In contrast, the lodestar may be and often is enhanced when awarding common fund fees.  She

insists that the amount that may be awarded to a plaintiff or to the class under the fee-shifting statute is distinct from the amount that may be awarded to an attorney from the common fund for a successful result in the litigation.

### Court's Decision

Because an award of attorneys' fees is within the sound discretion of the Court, although the Court has considered all of Defendants' objections, rather than summarizing them the Court addresses the factors on which it bases its fee and costs award decision.[12]

## I.  Windfall If Fees Are Awarded Under Both The Statute and Common Fund Doctrine

Although Defendants argue that common fund fees cannot be awarded here because the case proceeded to judgment and the common fund doctrine is typically confined to cases that settle, the Court finds that courts have recognized the applicability of the doctrine to judgment cases.  *See, e.g., Boeing*, 444 U.S. at 478, 482 .7;

---

[12] The Court notes that of the three methods to determine a reasonable attorneys' fee award (lodestar, percentage, or a hybrid of the two in which a percentage is awarded and then cross-checked for reasonableness by applying the lodestar method, the Fifth Circuit has not formally adopted the percentage method, has always recognized the lodestar method, and "appears to tolerate the percentage method" as long as the *Johnson* factors are applied to ensure the award is reasonable.  *See, e.g., In re Vioxx Products Liability Litig.*, 760 F. Supp. 2d 640, 650-52 (E.D. La. 2010), *citing Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 851-52 & n.5 (5th Cir. 1998), and *Forbush v. J.C. Penney Co.*, 98 F.3d 817, 823-25 (5th Cir. 1996).

*United States ex rel. Bogart v. King Pharmaceuticals*, 493 F.3d 323, 329 (3d Cir. 2007)("In the 'classic' common fund case, like a class action, the litigation generates a pool of money, either through a judgment or settlement, to which the beneficiaries are entitled to claim a portion."). *See also* 4 William B. Rubenstein, Alba Conte, and Herbert B. Newberg, *Newberg on Class Actions* § 14:6 (4th ed. Database updated June 2011)("The common fund doctrine allows a court to distribute attorney's fees from the common fund that is created for the satisfaction of class members' claims when a class action reaches settlement or judgment.").

The Court agrees with Plaintiff that it has the power and discretion to award reasonable fees under both the statute and the common fund doctrine. *See, e.g., Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003); *Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1327 (2d Cir. 1990).

Nevertheless the Court concludes that permitting Plaintiff to recover under both the statute and the common fund doctrine would give Plaintiff a windfall (since she/the class would receive the lodestar award under ERISA § 502, but would not need to use it to pay for attorneys' fees if the fee award from the common fund is also granted to counsel). The Court finds no justification for such a double award. *See, e.g., Brytus v. Spang & Co.*, 201 F.3d 238, 244 (3d Cir. 2000)(affirming district court's discretionary decision to award fees under the statute, which provided reasonable

-14-

compensation, and deny additional fees to counsel under the common fund doctrine because allowing recovery under both would be "to award counsel duplicative recovery, a goal not contemplated by either the fee-shifting provision or the common fund theory.")[13]; *Carraba v. Randalls Food Markets, Inc.*, 191 F. Supp. 2d 815, 823-24, 826-27 (N.D. Tex. 2002)(fee shifting award that counsel already

---

[13] In *Brytus*, the Third Circuit indicated that it was **not** establishing a categorical rule that where an attorney is permitted to recover fees under both a fee-shifting statute and the common fund doctrine, the fee-shifting provision preempted the common fund doctrine. The district court had made clear that "[m]erely because a statute does not preempt the application of a doctrine, it does not follow that a court is *required* to apply the doctrine; rather because the common fund doctrine is equitable "'its application rests within the discretion of the district court.'" 203 F.3d at 244-45. On the facts before it, in the exercise of its equitable powers the district court in *Brytus* denied the common fund fee because it found that counsel had already been reasonably compensated under the fee-shifting provision of ERISA. *Id.* at 245. Fee shifting is appropriate where plaintiffs have prevailed, because the defendant found liable pays the fee; in contrast a common fund award "would deprive the [ERISA] beneficiaries of a portion of the award." *Id.* at 247. Where the case has settled, "the basis for the statutory fee has been discharged, and it is only the fund that remains. . . [C]onsideration of the attorney's fees was likely factored into the amount of settlement." *Id.* at 246. A common fund fee might be appropriate where there is a fee-shifting statute and the case goes to judgment rather that being settled, for example when the defendant that is responsible for the statutory fee goes bankrupt or otherwise lacks sufficient funds to pay the award or where the fee applicant demonstrates that competent counsel could not have been obtained for the case. *Id.* at 247. The common fund doctrine should apply where an inequity needs redress, such as unjust enrichment of absent class members who benefit from prevailing in the case but would otherwise pay no fees, unlike the litigating class member. *Id.* at 245. Emphasizing that the ultimate goal of both methods is a reasonable fee, the court pointed out that if a common fund fee is awarded, the amount should be cross-checked by a lodestar analysis to ensure that goal is realized. *Id.* at 247.

received is more than adequate to compensate counsel for their work on behalf of the class, including risk of loss); *United States ex rel. Bogart v. King Pharmaceuticals*, 493 F.3d 323, 331 (3d Cir. 2007)(discussing denial of equitable common fund fees in *Brytus* and concluding that "'there is no inequity to redress' because the defendant, rather than the plaintiff, ultimately bore the entire cost of litigation under ERISA's statutory fee provision.").  In the instant action, because the case did not lead to an early settlement, Plaintiff's counsel have expended a great deal of time and effort over a lengthy litigation period.  The long pendency of this suit, which in large part was due to United Way's unyielding and vigorous defense, indicates that a statutory award using the lodestar calculations should provide Plaintiff's counsel with a fair, reasonable, and substantial fee under the circumstances of this case and diminishes the risk that the lodestar will not fairly reflect the value of their services in the marketplace.  Moreover, because the amount of pension benefits recovered by each participant or beneficiary here is relatively limited, the Court finds that equity weighs in favor of denying a common fund fee and having United Way pay the fee under the statute.

Furthermore, as discussed *infra*, ERISA's alienation statute would bar much of Plaintiff's recovery from a common fund.

## II. ERISA's Anti-Alienation Provision

Citing *Kickham Hanley, P.C. v. Kodak Retirement Income Plan*,

-16-

558 F.3d 204 (2d. Cir. 2009)(holding that a law firm's claim for attorney's fees that will be paid out of undistributed, vested benefits of a pension plan violates the anti-alienation provision of ERISA, Section 206(d)(1), 29 U.S.C. § 1056(d)(1),[14] and therefore the common fund does not give the firm an interest in that portion of the benefits), Defendants argue that Humphrey's attorneys are not eligible to collect a fee based on the amount of the final judgment because Groups III and IV of the Class contain persons who **in the future may be** eligible to receive the Early Retirement Pension and who also may elect not to.   Defendants argue that potential future sum comprises more than half of the proposed common fund.

   Plaintiff responds that in *Boeing*, only 47% of the class members claimed their judgment benefit, but the Court found that the award of attorney's fees from the entire judgment fund was "a proper application of the common-fund doctrine."   444 U.S. at 476 & n.4 and 480-81.   The unjust enrichment rationale for this equitable doctrine is that "unless absentee members of the class contribute to payment of attorney's fees incurred on their behalves, they will pay nothing for the creation of the fund and their representatives may bear additional costs"; an award of fees from the judgment fund "rectifies this inequity by requiring every

---

[14] Section 206(d)(1) provides, "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated."

member of the class to share attorney's fees to the same extent he can share the recovery." *Id.* at 480.  Moreover Plaintiff argues (1) that *Boeing* is federal common law, (2) that ERISA, including the anti-alienation provision, supersedes state law relating to an employee benefit plan, but does not bar federal common law claims, and (3) that under *Boeing* it does not impair this Court's ability to award common-fund fees to her attorneys.

*Boeing*, which addressed recovery of fees in a class action under the common fund doctrine generally, not specifically under ERISA, was issued in 1980.  *Kickham* relies on a Supreme Court's decision issued ten years later, *Guidry v. Sheet Metal Workers National Pension Fund*, 493 U.S. 365 (1990), addressing the specific anti-alienation provision unique to ERISA; the Court concludes that on this issue it controls.  In *Guidry*, the high court focused for the first time on ERISA's anti-alienation provision and held that section 206(d)(1) bars any attempts to garnish ERISA pension plan benefits to satisfy a judgment, even if the beneficiary participated in criminal actions.  *Id.* at 376.  *See also Martorana v. Board of Trustees of Steamfitters Local Union 420,* 404 F.3d 797, 802-03 (3d Cir. 2005).  The *Guidry* court opined,

> Section 206(d) reflects a considered congressional policy choice, a decision to safeguard a stream of income for pensioners (and their dependents, who may be, and perhaps usually are, blameless), even if that decision prevents others from securing relief for the wrongs done them.  If exceptions to this policy are made, it is for Congress to undertake that task.
>        As a general matter courts should be loath to

announce    equitable    exceptions[15]    to    legislative
requirements or prohibitions that are unqualified by the
statutory text.  The creation of such exceptions, in our
view, would be especially problematic in the context of
the antigarnishment provision.  Such a provision acts, by
definition, to hinder the collection of a lawful debt.
A restriction on garnishment therefore can be defended
*only* on the view that the effectuation of certain broad
social policies sometimes takes precedence over the
desire to do equity between particular parties.  It makes
little  sense  to  adopt  such  a  policy  and  then  refuse
enforcement whenever enforcement appears inequitable.  A
court attempting to carve out an exception that would not
swallow  the  rule  would  be  forced  to  determine  whether
application of the rule in particular circumstances would
be  "especially"  inequitable.   The  impracticability  of
defining such a standard reinforces our conclusion that
the identification of any exceptions should be left to
Congress.

*Id.* at 376-77 (noting, as an example of Congressional action,

Section 104(a) of the Retirement Equality Act of 1984, where

Congress required that the anti-alienation provision should not

apply to a "qualified domestic relations order").[16]   Congress

amended § 206 in 1997 to permit set-offs of pension benefits in

specific situations, e.g., when a fiduciary breaches his duty to

---

[15] "The common fund doctrine is equitable in nature, intended
to avoid unjust enrichment at the expense of the successful
litigant." *Bogart*, 493 F.3d at 328, *citing Boeing*, 444 U.S. at 478
("The common fund doctrine reflects the traditional practice in the
courts of equity."), *citing Trustee v. Greenough*, 105 U.S. 527,
532-37 (1882).

[16] A number of courts have recognized that Congress created
another such exception in passing the Mandatory Victim Restitution
Act of 1996 for orders mandating that a criminal defendant must pay
restitution. *See, e.g.*, the discussion in *United States v. Miller*,
588 F. Supp. 2d 789, 794-96 (W.D. Mich. 2008)(and cases cited
therein); *United States v. DeCay*, 620 F.3d 534, 540-41 (5th Cir.
2010).

the plan.  *Martorana*, 404 F.3d at 804 & n.3, citing 29 U.S.C. §
1056(d)(4)(A)(i)-(iii).  Congress has not carved out an exception
to the anti-alienation provision for attorney's fees for services
relating to an ERISA suit from a common fund that includes
potential future payments.  Meanwhile the fee shifting statute
provides Plaintiff's counsel with an adequate means to receive a
reasonable fee award.

Plaintiff argues that under the Second Circuit's reasoning in
*Kickham*, an award of common fund fees does not violate ERISA's
anti-alienation provision because the claims were "contested."  558
F.3d at 213.  The Second Circuit distinguished a "pension
entitlement" that arises under terms of the pension plan from a
"contested pension claim" that arises under a settlement agreement;
it concluded, "While pension entitlements are subject to the anti-
alienation provision, contested pension claims are not and may be
knowingly and voluntarily released as part of a settlement
resolving an actual or potential dispute over pension benefits."
*Id.*  The Court would point out that there was no settlement
agreement here negotiated by Class members and Defendants and by
which Class members' claims were voluntarily released and they
waived their rights to participate in the ERISA plan.  Thus those
that are conditional and/or future pension benefits are still held

by the plan administrator.[17]

The Court agrees with Defendants that the anti-alienation provision would preclude Humphrey from receiving fees from that portion of a common fund comprised of undistributed and/or only potential future benefits.

Thus the Court examines Plaintiff's request for fees and costs incurred since April 26, 2008 under ERISA § 502(g), 29 U.S.C. § 1132(g).

## III.  Lodestar Calculation under ERISA's Fee-Shifting Statute

In a recent opinion the United States Supreme Court addressed the lodestar method of calculating fees under fee-shifting statutes, in that civil rights case, under 42 U.S.C. § 1988. *Perdue v. Kenny A.*, _____ U.S. _____, 130 S. Ct. 1662 (2010). Criticizing the use of the *Johnson* factors alone as referencing "'a series of sometimes subjective factors plac[ing] unlimited discretion in trial judges and produc[ing] disparate results,'" the Supreme Court opined that while the lodestar approach "is not perfect," it has significant advantages:  in accordance with the goal of fee-shifting statutes, it "looks to the prevailing market

---

[17] Plaintiff cites *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002), and *Forbush v. J.C. Penney Co. Pension Plan*, 98 F.3d 817, 821 (5th Cir. 1996), to support her assertion that numerous federal courts have awarded attorneys' fees to class counsel from a common fund created to pay contested ERISA pension benefits and have not mentioned the anti-alienation provision.  The Court observes that both of these cases involved settlement agreements.

rates in the relevant community'" and "produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Id.* at 1672, *quoting Blum*, 465 U.S. at 895, and *Burlington v. Dague*, 505 U.S. 557, 566 (1992). Moreover it is "readily administrable" and "objective, and thus cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results." *Id.*

The high court summarized "six important rules" established by earlier cases addressing federal fee-shifting statutes: (1) a "reasonable fee" is one that is adequate to induce a competent attorney to undertake the case, but "not produce windfalls to attorneys"; (2) there is a "strong presumption" that the lodestar method's resulting fee is reasonable and is sufficient to induce a competent attorney to take the case; (3) enhancements of the lodestar may be awarded only in "rare" and "exceptional" circumstances; (4) the lodestar subsumes most, if not all, of the relevant factors constituting a reasonable fee, and an enhancement may not be awarded based on a factor that is included within the lodestar calculation; (5) the fee applicant must prove that an enhancement is necessary; and (6) the fee applicant seeking an enhancement must produce "specific evidence"[18] that supports such

---

[18] *Citing Dague*, 505 U.S. at 901.

an award.  *Id.* at 1672-73.[19]

Moreover, the Supreme Court reaffirmed that the novelty and complexity of a case generally are subsumed in the lodestar and not grounds for enhancement of a reasonable fee under a fee-shifting statute.  *Id.* at 1673.  The same is true regarding the quality of an attorney's performance and the results obtained, unless the fee applicant demonstrates that these factors were not taken into account in the lodestar calculation, a "rare" and "exceptional" occurrence.  *Id.* at 1673-74.  Enhancement may be appropriate if the fee applicant shows that the lodestar "does not adequately measure the attorney's true market value, as demonstrated in part during the litigation," or that the attorney has made "an extraordinary outlay of expenses and the litigation is exceptionally protracted," or that an unusual delay in a fee award is exceptional and warrants an enhancement.  *Id.* at 1674.

For an award under the fee shifting statute, apparently recognizing the increasing restrictions on enhancement of the lodestar, Plaintiff asks for no enhancement under § 502 for the additional costs and fees incurred after the last award, i.e., since April 22, 2008.  #179 at 60.

Plaintiff asks for a $25 increase in hourly rates since the Court's 2008 award (currently, for  Hertz Schram, PC's partners,

---

[19]  It would appear that any multiplier applied after the lodestar is computed would also be limited to rare and exceptional factors not subsumed in the lodestar calculation.

$425, for associates, $225, and for paralegals, $125). She presents a chart (#179 at 37-38) to demonstrate that these increased rates are well within the range of the hourly rates in 2008 for attorneys, associates and paralegals who handle employment, benefits or complex cases in the Southern District of Texas and within those opposing counsel represented in his earlier affidavit (#138-1), as well as within hourly rates in numerous similar cases in this district, many of which were higher than the increased rates requested by Humphrey for work since April 22, 2008. Defendants object that counsel does not provide a reasonable justification for the increase other than "passage of time," and urge that if the Court grants the increase, it should not apply to work performed by Humphrey's law firm in 2008, for which the Court previously determined the market rate. The Court finds the requested increase to be modest and reasonable since three years have passed since the last fee award. Moreover, it is well established that where there is a significant delay between the time legal services are rendered and an award of fees, a district court can either award a delay enhancement or make the award on current market rates. *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989); *Walker v. U.S. Dep't of HUD*, 99 F.3d 761, 773 (5th Cir. 1996); *Paris v. Dallas Airmotive, Inc.*, Civ. A. No. 3:97-CV-0208, 2004 WL 2100227, *11 (N.D. Tex. Sept. 21, 2004). This Court chooses the latter option.

In its previous award[20] the Court applied the *Bowen* factors[21] and found that they supported a fee award to Plaintiff; its analysis would not have changed for this application.[22]

Time Records are submitted as Exhibit PX 102 to #179. Moreover, after a reduction for writeoffs (entries indicated by

_____

[20] *Humphrey v. United Way of the Texas Gulf Coast*, Civ. A. No. H-05-758, 2008 WL 5070057, *4-5 (S.D. Tex. 2008).

[21] The five *Bowen* factors are as follows: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing party would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions. *Bowen*, 624 F.2d at 1266.

[22] A few years ago the rule in the Fifth Circuit was that generally it was an abuse of discretion for a district court to assess attorneys' fees without considering the *Bowen* factors. *See, e.g., Todd vi AIG Life Ins. Co.*, 47 F.3d 1448, 14458-59 (5th Cir. 1995); *Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich.*, 97 F.3d 822, 833 (5th Cir. 1996). In *Hardt v. Reliance Standard Life Ins. Co.*, 130 S. Ct. 2149, 2157-58 (2010), the Supreme Court held that an ERISA statutory fee award is not limited to a "prevailing" party, but that fees and costs may be awarded to a party that has achieved "some degree of success on the merits." The Fifth Circuit subsequently commented that in the wake of *Hardt*, "[a] district court may consider the five factors, but *Hardt* does not mandate consideration." *1 Lincoln Financial Co. v. Metropolitan Life Ins. Co.*, No. 10-11168, 2011 WL 2391602, *1 (5th Cir. June 15, 2011), *citing Hardt*, 130 S. Ct. at 2158 ("Because these five factors bear no obvious relation to § 1132(g)(1)'s text or to our fee-shifting jurisprudence, they are not required for channeling a court's discretion when awarding fees under this section.") & n.8 ("We do not foreclose the possibility that once a claimant has [shown that he has achieved 'some degree of success on the merits'], and thus becomes eligible for a fees award under § 1132(g)(1), a court may consider the five factors . . . in deciding whether to award attorney's fees.").

handwritten "WO" on the Time Records), Humphrey requests the following award of fees:

**Partners:**

Cantarella  $ 227.523.75 ($425 x 535.35 hours)

Shram       $ 17,510.00 ($425 x 41.20 hours)

Geller      $ 49,342.00 ($425 x 116.10 hours)

**Associate:**

McLeod      $  2,430.00 ($225 x 10.80 hours)

**Paralegal:**

Howes       $  4,562.50 ($125 x 36.50 hours)

**TOTAL:     $ 301,368.25**

The Court finds that documentation adequately describes the service(s) provided in the entries in the Time Record.  There is some impermissible block billing[23] by Eva Cantarella where an entry identifies a large block of time, lists the tasks performed during that period, giving some detail about the kinds of work performed on a particular day, but does not itemize the amount of time spent on each.[24]  Similar large blocks of time are entered by Cantarella

---

[23] "Block billing" is a "'time keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks.'"  *Fralick v. Plumbers and Pipefitters National Pension Fund*, Civ. A. No. 3:09-CV-0752-D, 2011 WL 487754, *4 (N.D. Tex. Feb. 11, 2011), *quoting Glass v. United States*, 335 F. Supp. 2d 736, 739 (N.D. Texas 2004).

[24] For example on 4/24/08 Eva Cantarella spent nine hours on

on 12/02/08 (6.75 hours), 12/04/08 (5.25 hours), 12/05/08 (6 hours), 12/22/08 (6.5 hours), 10/05/09 (7.5 hours). Nevertheless, ["a] reduction for block billing is not automatic." 2011 WL 487754, at *5. "'Courts disfavor the practice of block billing because it impairs the required reasonableness evaluation. When time records are block billed, the court cannot accurately determine the number of hours spent on any particular task, and the court is thus hindered in determining whether the hours billed are reasonable.'" *Id., quoting Barrow v. Greenville Indep. Sch. Dist.*, 2005 U.S. Dist. LEXIS 34557, *11 (N.D. Tex. Dec. 20, 2005). These cited entries "lump together" too many tasks and make it impossible for the Court to determine whether the amount of time for any particular one was reasonable. The Court will therefore reduce Cantarella's fees by 5% (or $11,376.19), leaving a request by her for $216,146.56.

In this second motion for award of fees, Plaintiff has addressed billing judgment, which requires the applicant to provide "documentation of hours charged and of the hours written off as unproductive, excessive, or redundant.'" *Fralick v. Plumbers and*

---

SEVERAL CONFERENCES WITH BJS AND RPG RE MOTION AND BRIEF FOR ATTORNEYS' FEES, COSTS AND PREJUDGMENT, AND EXHIBITS AND AFFIDAVITS THERETO:  POLISH ALL AND PREPARE INDEX OF AUTHORITIES FOR BRIEF; COORDINATE WITH ACCOUNTING THE ORGANIZATION OF THE TIME AND EXPENSE RECORDS AND SPREADSHEET SUMMARIZING THE TIME AND EXPENSE INFORMATION; E-FILE MOTION AND BRIEF, AMENDED EXHIBIT LIST, AND EXHIBITS; COORDINATE WITH H. THOMPSON RE JUDGE'S COPIES AND BINDER AND FED-X OF SAME TO JUDGE HARMON

*Pipefitters National Pension Fund*, Civ. A. No. 3:09-CV-0752-D, 2011 WL 487754, *3 (N.D. Tex. Feb. 11, 2011), *citing Walker v. U.S. Dep't of Housing & Urban Dev.*, 99 F.3d 761, 770 (5th Cir. 1996), and *quoting Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006). "[B]ald assertions regarding the exercise of billing judgment are insufficient." *Id.* Plaintiff has indicated Hertz Shram PC's exercise of billing judgment in this action by marking those entries written off as "WO" in the Time Records for the designated period. From the description of the service provided in each, viewed in the context of the other entries, the Court finds that the selected writeoffs appear to be redundant of other entries and are appropriately deleted from the fee request. Counsel have demonstrated billing judgment.

Nor are the entries in the Time Records too vague--counsel standardly and adequately identify the particular legal issue, document, purpose of telephone calls and conferences, or service for which they are billing.[25]

On rare occasion, work identified in counsel's entries is clerical, e.g., e-filing documents or Fed-Ex-ing, but the Court finds the few references are too minimal to warrant a reduction.

Defendants have objected to the request for an award for

---

[25] "Bare descriptions, without any reference to content or purpose, do not demonstrate that the services were necessary and that the amount of time expended was reasonable." *Fralick*, 2011 WL 487754, *10.

139.45 hours relating to preparation of the Rule 54 motion, which is more than they spent to prepare the original motion for fees and costs up to April 22, 2008. Defendants point out that most of the time was spent on Plaintiff's flawed common-fund request for fees, while the remainder is "a regurgitation of the arguments Humphrey made in support of her Original Fee Application, [which] it should have taken Humphrey's counsel no more that a few hours to prepare . . . ." #183 at 18. The Court rejects this argument. Humphrey certainly has legal justification for requesting a common fund fee and cost award, for which there is substantial legal precedent. This Court in its discretion chooses to deny that request in light of all the circumstances in favor of ERISA statutory fees based on equitable concerns. Plaintiff's counsel should not be denied fees that were justifiably expended in seeking a common fund award for their efforts.

Defendants complain that the requested statutory fees are excessive because virtually of the work had already been accomplished to enable Humphrey to file a proposed final judgment (class certification, clarification of the class definition, summary judgment on all liability issues, and submission of the original fee application). They assert, "most of the work Humphrey's counsel undertook after April 22, 2008 could have been avoided if Humphrey had simply filed, in April 2008, a proposed judgment that left blanks for statutory attorney's fees and costs

the Court subsequently awarded in its November 20, 2008 Opinion & Order." #183 at 11.

The Court disagrees with United Way. A substantial portion of the remaining litigation was necessitated mainly by Defendants' zealous defense or by the Court, and occasionally the Court has had to order Defendants to turn over information that Humphry had reasonably requested but not received. After granting Plaintiff's motion for summary judgment and denying Defendants', the Court required the parties to provide significant information about the ERPs and requested Humphrey to file a motion for fees and costs, which she had sought in her pleadings (#125 at 18-19). After Humphrey filed her first motion for costs and fees on April 24, 2008, Defendants filed a premature Notice of Appeal (#127), resulting in the filing of objections by Plaintiff (#130). Defendants also filed objections (#138) to the motion for costs and fees, to which Humphrey filed a reply (#140). The parties jointly requested the Court to clarify (#145) that the opinion and order granting summary judgment was not a final, appealable order, which the Court then did (#146). A day later the Fifth Circuit dismissed the premature Notice of Appeal (#147). The Court granted in part and denied in part Humphrey's first motion for fees and costs (#148) on November 20, 2008. On December 12, 2008 Humphrey filed a motion to serve a supplemental notice on Group III and IV Class members (#152), stating that costs would to be paid by counsel and

not by the Class, so counsel could advise them regarding
eligibility criteria for an ERP and additional benefits payable
under the summary judgment ruling to aid them in making an informed
and timely decision about electing ERP, and she asked the court for
an order requiring Defendants to provide an updated list of Group
III and IV Class members, as well as other relevant information.
Defendants objected (#156), and the Court granted in part and
denied in part the motion to serve notice and granted the request
to order Defendants to provide the benefit accrual information
(#162).  On December 22, 2008 Plaintiff filed a proposed final
judgment (#153) and a request for an order requiring Defendants to
provide benefit and accrual information on these same Class members
so their estimated damages, payable in the future, could be
included in the final judgment. Defendants filed objections (#156,
157), again to which Humphrey reasonably replied (#158, 160).
Defendants objected to the proposed final judgment in a rehash of
earlier arguments on the merits and a new issue regarding
prejudgment interest (#159).  Humphrey then filed a reply
indicating that she was willing to join  Defendants on their
proposed prejudgment interest date and filed an amended proposed
Final Judgment with that date (#161).  On September 29, 2009
(#162), the Court *sua sponte* ordered Defendants to provide benefit
accrual and contact information on Group III and IV Class members
and asked the parties to brief the issue of whether one or more

-31-

sub-trusts should be created to hold estimated damages due Class members (briefs filed in response to order, #164-168). Humphrey's brief suggested as an alternative to sub-trusts a periodic accounting (#168 at 10-13), which was the solution the Court ultimately embraced (#169 at 41-43). During that time Humphrey received the benefit accrual and contact information on Group III and IV Class members from Defendants and accordingly filed an amended proposed Final Judgment that included the Groups' estimated current damages (#165), after exchanging numerous emails with Defendants' counsel to determine points of agreement (Time Records, PX 106). Defendants then filed objections to that proposed judgment (#167), to which Humphrey justifiably replied (#168). The Court issued a lengthy Opinion and Order (#169) on November 15, 2010, reaffirming its prior decisions on the merits of the claims, overruling the objections to the second proposed Final Judgment, and ordering an annual accounting of damages for the Class instead of sub-trusts, as well as requiring Defendants to update the damages figures in the proposed second amended Final Judgment. Plaintiff, in compliance with a court order, filed an amended Proposed Final Judgment (#170), and the Court issued a similar Final Judgment (#171) on December 9, 2010. Humphrey then filed the instant motion for fees and costs (#179). Defendants then filed the motion for a new trial now before the Court, reiterating many issues that had been resolved previously, necessitating the filing

-32-

of objections by Humphrey (#184).

The Court finds that most of Plaintiff's request for fees for these services is justified.  Complained of reiteration of earlier issues falls largely at the feet of Defendants.

Nevertheless the Court does find merit in Defendants' objection as highly inflated the 33 hours[26] spent by partners, as claimed by Plaintiff's counsel, for addressing Defendants' premature appeal of the Court's March 28, 2008 ruling on cross-motions for summary judgment in favor of Plaintiff (#125).  In their Notice of Appeal (#127), Defendants, themselves, immediately raised six aspects of the opinion that suggest it is not a final and appealable order,[27] comprising almost all of the Notice, but at the end stated simply and concisely that they were filing the Notice of Appeal "out of an abundance of caution" to preserve their

_____

[26] #183, Ex. 1-G.

[27] Specifically in their Notice of Appeal Defendants point out that the Court did not enter a "final judgment" by "separate document" as required by Fed. R. Civ. P. 58(a)(1); the Opinion and Order did not state that it was a final judgment; the Opinion and Order required Defendants "to compute the ERP payable to each Class member in accordance with the foregoing declaration and, if the ERP has already been distributed, to pay the Class Members the difference between that amount and the amount computed in accordance with the Court's declaration," but does not award a specific amount of damages to either the Plaintiff, the Class Members or the Class as a whole; the Opinion and Order orders Defendants to pay pre-judgment interest "at a rate to be determined upon further briefing by the parties"; on April 24, 2008 Plaintiff had filed a motion for costs and attorneys' fees under ERISA § 502 and for prejudgment interest (#126), which had to be resolved; and the opinion and order states that Plaintiff may file a timely motion and brief to recover costs and reasonable attorneys' fees.

rights.   Defendants point out that the Notice of Appeal was resolved when on July 15, 2008 Humphrey and United Way filed a joint motion for clarification (#145) as to the March 28, 2008 Opinion and Order, which the Court granted the next day (#146). Moreover, the Fifth Circuit dismissed the appeal (#147) on July 17, 2008.  Defendants urge that if the Court grants any fees regarding the appeal, the award should be limited to 3.5 hours spend by Cantarella on April 29, 2008 in responding to the Notice of Appeal and .4 hours spent by Geller on July 15, 2008 on the joint motion for clarification.   The Court agrees and reduces the award by 29 hours at $425 each, or $12,325.

**IV.  Award of Costs under § 502(g)(1), 29 U.S.C. § 1132(g)(1)**

For the period after April 22, 2008 Plaintiff requests additional costs in the amount of $26,596.83.  Expense Records PX 103.  The specific costs requested by Plaintiff from post April 23, 2008 through December 31, 2010 (#179 at 51) are for copies, $1371.80; Federal Express Charges, $279.78; actuarial fees, $24,881.50; and postage, $63.75.  Most of this sum was based on actuarial fees to check damages of each of the Class subgroups and to calculate prejudgment interest.

In the Fifth Circuit, unlike an award of attorneys' fees, an award of costs in an ERISA case is governed by the "prevailing party" test.  *Lemon v. Liberty Life Assurance Co. of Boston,* 304 Fed. Appx. 273 (5th Cir. Dec. 22, 2008), *citing Wade v. Hewlett-*

-34-

*Packard Dev. Co. LP Short Term Disability Plan*, 493 F.3d 533, 543 (5th Cir. 2007).  In *Johnson v. Prudential Ins. Co. of America*, Civ. A. No. H-06-0130, 2008 WL 901526, *7 (S.D. Tex. Mar. 31, 2008), Judge Lee Rosenthal summarized,

> "The definition of 'prevailing party' does not differ from rule-to-rule or statute-to-statute." *Schultz v. United States*, 918 F.2d 164, 166 n.2 (Fed. Cir. 1990), *(citing Hensley v. Eckerhart*, 461 U.S. 424, 433 n.7 . . . (1983).  To qualify as a prevailing party, "the plaintiff must (1) obtain actual relief such as an enforceable judgment or a consent decree; (2) that materially alters the legal relationship between the parties; and (3) modifies the defendant's behavior in a way that directly benefits the plaintiff at the time of the judgment or settlement." *Walker v. City of Mesquite*, 313 F.3d 246, 249 (5th Cir. 2002).  "The touchstone of the prevailing party inquiry . . . is the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Sole v. Wyner*, [551 U.S. 74, 82] . . . (2007)(quoting *Tex. State Teachers Assn. v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 . . . (1989)).

Plaintiff has prevailed on virtually every issue in this litigation.

Nevertheless Defendants rightly insist that the award of costs after April 23, 2008 may not include amounts paid to the actuary ($24,881.50).  ERISA allows a prevailing party to recover her "costs of action."  29 U.S.C. § 1132.  The Fifth Circuit has held that an award of costs in an ERISA case is limited to those listed in 28 U.S.C. § 1920.[28]  *Cook Children's Medical Center v. New*

───────────

[28] Section 1920 provides that the following may be taxed as costs:

(1) Fees of the clerk and marshal;

-35-

*England PPO Plan of Gen. Consol. Management, Inc.*, 491 F.3d 266, 275-76 (5th Cir. 2007), *cert. denied*, 552 U.S. 1180 (2008)(holding that mediation fees cannot be awarded as costs in an ERISA suit because they are "not explicitly authorized by § 1920."). Actuarial fees are not listed in § 1920. Indeed experts are not to be compensated as costs unless they are "court appointed," § 1920(6), but Plaintiff's actuary was not. Thus the request for costs must be reduced by $24,881.50.

## V. Incentive Award to Humphrey

Plaintiff has requested an incentive award of $10,000 for Humphrey's efforts in this litigation. Incentive awards are discretionary and "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and sometimes to recognize their willingness to act as private attorney general." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948,959 (9th Cir. 2009). Federal courts have approved incentive awards to compensate class representatives for the services they provide and the extra

---

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

burdens they bear during litigation, e.g., greater subjection to discovery, including depositions on behalf of the class. *Braud v. Transport Service Co. of Ill.*, CIV. A. 05-1898 *et al.*, 2010 WL 3283398, *14 (E.D. La. Aug. 17, 2010); *McClain v. Lufkin Industries, Inc.*, CIV. A. 9:97CV63, 2010 WL 455351, *25 (E.D. Tex. Jan. 15. 2010), *citing inter alia In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 373 (S.D. Ohio 1990)("Numerous courts have not hesitated to grant incentive awards to representing plaintiffs who have been able to effect substantial relief for the classes they represent."), and *In re Revco Sec. Litig., Nos.*, 851 89CV593, 1992 WL 118800, *7 (N.D. Ohio May 6, 1992)("Numerous courts, recognizing that serving as a class representative involves a substantial time commitment to the litigation, have permitted such awards."). Moreover, "[b]ecause a named plaintiff is an essential ingredient of any class action an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

In determining whether to make such an award, the court may consider such factors as "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those additions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Id.* In *Cook v. Niedert* the Seventh Circuit found an incentive award

-37-

warranted because the named plaintiff

> brought a suit that resulted in structural reforms to the
> Health & Welfare Fund as well as a cash recovery of more
> than $13 million.  In findings that were well supported
> by the evidence, Special Master McGarr noted that Cook
> spent hundreds of hours with his attorneys and provided
> them with an "abundance of information."  Most
> significantly, the special master found that, in filing
> the suit Cook reasonably feared workplace retaliation.
> In light of the benefit Cook bestowed on his class, the
> risks he faced in bringing the case and the time he spent
> pursuing it, [the district court] did not err when she
> approved a $25,000 incentive award.

*Id.*  In *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294,

299 (N.D. Cal. 1995), like *Rodriguez* cited for relevant factors,

the court identified the following non-exhaustive list of criteria

for determining whether an incentive award is appropriate:  "1) the

risk to the class representative in commencing suit, both financial

and otherwise; 2) the notoriety and personal difficulties

encountered by the class representative; 3) the amount of time and

effort spent by the class representative; 4) the duration of the

litigation; and 5) the personal benefit (or lack thereof) enjoyed

by the class representative as a result of the litigation."

"On the other hand such an award can be abused where an

unjustified award is made to a plaintiff at the expense of other

class members."  *Rodriguez*, 563 F.3d at 959 n.4 (observing that in

the Class Action Fairness Act of 2005, Congress found, "Class

members often receive little or no benefit from class actions, and

are sometimes harmed, such as where . . . (B) unjustified awards

are made to certain plaintiffs at the expense of other class

members."), *citing* Pub. L. No. 109-2, § 2(a)(3), 119 Stat. 4.

While Plaintiff has requested an incentive award of $10,000, significantly she has not provided any details nor documentary support demonstrating the nature of her contribution, the hours she put in, the time consulting with counsel, time spent in discovery proceedings, or what information she provided to counsel. Indeed Humphrey's standing in this suit arose from her status as a designated beneficiary of pension benefits that were payable under United Way's 96Plan to deceased plan participant Frederick B. Blackmer. Blackmer commenced the investigation that led to this suit. There was no great risk to Humphrey in taking over after he died since the she would receive at minimum what Defendants determined was Blackmer's pension benefit, while the additional benefit she would receive if she prevailed here was not great and the fee-shifting provision provided her with some protection. She had no fear of workplace retaliation since she never worked for Defendants. Moreover, and perhaps most important, since this case went to judgment and no settlement agreement was negotiated that might have included consideration that she would receive an incentive award, an award to her would be deducted in large part from the benefits due to the other class members, whose recoveries of pension benefits, individually, is limited. For all these reasons the Court denies the request for an incentive award here. *See, e.g., Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 410 (7th

Cir. 2000)(affirming district court's denial of incentive award
where counsel failed to seriously argue for one, especially in the
amount requested, and it did not appear that lead plaintiff "had to
devote an inordinate amount of time to the case or that, as a
former employee, he suffered or risked any retaliation" by
defendant).

**ORDER**

Accordingly, for the reasons stated above, the Court

ORDERS that United Way's" Rule 59 motion to alter or amend the
judgment, or alternatively motion for reconsideration, or
alternatively motion for new trial (instrument #180) is DENIED.
The Court further

ORDERS that Plaintiff's Rule 54 motion (#179) for common-fund
costs and fees is DENIED, but her motion for additional costs and
attorneys' fees and costs under ERISA § 502(g), 29 U.S.C. §
1132(g), incurred from April 23, 2008 through December 31, 2010 is
GRANTED to the extent indicated in this Opinion and Order.   The
total award for fees and costs under ERISA § 502 is $277,667.06 and
$1,715.33, respectively.   In addition, the Court

ORDERS that Plaintiff's request for an incentive award is
DENIED.   Finally, Plaintiff stated that after the Court has ruled
on these remaining issues, she would prepare an Amended Final
Judgment incorporating all relevant rulings.   #179 at 61.
Accordingly, the Court

ORDERS that within two weeks of receipt of this Opinion and Order, Humphrey shall submit an Amended Final Judgment that is consistent with the rulings in this case.  Any objections to it shall be made by Defendants within seven days of receipt of that proposed judgment.

**SIGNED** at Houston, Texas, this  _28th_  day of  _July_ , 2011.

 

 

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE